[Civ. No. 23424.   Second Dist., Div. One.   Jan. 19, 1960.]

ELMER MORSEMAN, a Minor, etc., et al., Appellants, v. ELIZABETH L. MANGUM et al., Respondents.

Lynch & Reilly and Charles H. Lynch for Appellants.

Edward Henderson, Margaret Keller and Sheridan, Orr, Barnes, Duval & Benton for Respondents.

WOOD, P. J.—This is an action for damages for personal injuries, and for damages to a pickup truck, allegedly caused when an automobile struck the rear end of the truck. Plaintiff Janssen was the operator of the truck, and plaintiff Morseman was a passenger in the truck. Defendant Elizabeth Mangum was the operator of the automobile.

The jury returned a verdict in favor of plaintiff Janssen for $417. The verdict as to plaintiff Morseman stated that the jury found in his favor and assessed damages in the sum of ''None'' dollars.

Judgment was entered in accordance with the verdicts. Plaintiffs' motion for a new trial, as to damages only, was denied. They appeal from the judgment.

Appellants contend that the verdicts are inadequate as a matter of law, and that the verdicts reflect passion and prejudice on the part of the jury.

The collision occurred on September 10, 1956, about 4:30 p.m., on Thompson Boulevard in Ventura. The truck, which had been traveling west on Thompson, was stopped about 100 feet east of the intersection of that boulevard and Chrisman Street when it was struck in the rear by the automobile.

Plaintiff Janssen testified as follows: While he was approaching the intersection he was traveling between 25 and 30 miles an hour. About five automobiles were in front of him and were traveling at the same rate of speed. He was about a car length behind the automobile which was next in front of him. The automobile in front of him stopped and the taillights of that automobile ''went on.'' As soon as he saw those lights he made an arm signal by putting his arm down by the side of the truck, and he applied the brakes. The truck stopped about half a car length behind the automobile which was in front of him. Two or three seconds after he stopped, the automobile operated by Mrs. Mangum struck the rear of the truck, and the truck moved forward 2 or 3 or 4 feet. (In a deposition, the witness testified that he did not think that the automobile pushed the truck forward after the impact—that it might have pushed the truck a foot.) He and Morseman went to the back of the truck. The bumper of the automobile had slipped under a tow bar which was attached to the rear of the truck, and the automobile and truck were locked together. He and Morseman stood on the bumper, and then Mrs. Mangum moved the automobile back.

Plaintiff Morseman testified as follows: Immediately preceding the collision the truck was traveling about 25 or 30

miles an hour. When the brake lights of the automobile ahead of the truck were lighted, Janssen applied the brakes of the truck and put his arm outside the window like he was making a stop signal. The truck stopped momentarily. Then he heard the screech of tires back of the truck, and as he turned to look back the automobile struck the truck. He was thrown backward, and the back of his head hit the rear glass of the truck.

Defendant Mrs. Mangum, the operator of the automobile, testified as follows: Before the collision she had been traveling, for several blocks, about a car length back of the truck and at a rate of speed between 28 and 30 miles an hour. The truck stopped suddenly. She applied the brakes when the stop lights of the truck "went on." She did not see Mr. Janssen give a signal. The automobile was going about 3 miles an hour when it hit the truck. Immediately after the collision she asked the plaintiffs if "anybody was hurt." They replied, "No."

With reference to his alleged injuries, plaintiff Janssen testified further, as follows: Immediately after the accident he did not feel any discomfort. The next morning he felt a soreness in the lower part of his back. At the time of the accident he was employed as a tree trimmer. The morning after the accident he went with a crew of workmen to a place about 30 miles from Santa Barbara, where he worked until noon. After noon he was unable to work and he sat in the truck until it returned to Santa Barbara about 4 p.m. The next day he consulted Dr. Needels, who treated him thereafter for approximately four months. The treatments consisted of manipulating the shoulders and applying physical therapy. Thereafter he consulted Dr. Burgess, who advised him to exercise, use a heat lamp, and wear an orthopedic belt. He wore the belt about two months. Upon the advice of doctors he did not return to his work as a tree trimmer. In February, 1957, he was employed by a nursery but he could not do heavy lifting. After working there about five months, he was in business for himself as a gardener. His monthly income from the work above referred to was as follows: as a tree trimmer, $341; as employee of nursery, approximately $265; as gardener, approximately $175.

Dr. Burgess, a witness on behalf of Janssen, testified: He examined Janssen in February, 1957 (about five months after the accident), and in his opinion Janssen had sustained a sprain of the last joint of the spine, and the sprain was not healing. Also there was some irritation of the nerves in that area. He prescribed exercise, physical therapy massage, and

the use of a canvas support. He saw Janssen several times—the last time was in May, 1957, when the doctor was of the opinion that the injury had "essentially healed." Janssen had a mild curvature in his lower back which was not attributable to the accident. The curvature would contribute to' the prolonged course of healing and perhaps would prevent healing in the ordinary time.

With reference to his alleged injuries, plaintiff Morseman testified further, as follows: Two or three minutes after the collision he noticed that he had a headache. The next morning there was pain in his neck. About a week later he consulted a physician. Thereafter he consulted Dr. Davis, a chiropractor, who manipulated the patient's neck and gave him heat treatments. He went to see Dr. Davis "off and on" for a year. About a month after the accident he quit school because his eyes blurred. Prior to the accident he worked nights as doorman at a theater. He did not lose any time from his work by reason of the accident. His X-ray bills amounted to $205.

Dr. Davis, a witness on behalf of Morseman, testified that he examined Morseman in October, 1956 (six weeks after the accident), and at that time the patient complained of headaches. He caused X-rays to be taken of the patient, but he has been unable to locate the X-rays. The X-rays indicated there was "no actual pathology," but there was a bony displacement. He concluded that the patient was suffering from a whiplash injury. When he last saw the patient in October, 1957, his condition was improved, but there were some tensions and pain.

It was stipulated that Morseman consulted an eye specialist who reported that there was no evidence of any eye damage.

Dr. McGovney, a physician, called as a witness by defendants, testified: He examined Janssen in August, 1957 (about eleven months after the accident). He found nothing wrong with him externally, and there was no deformity of his back. His range of motion in the back areas was entirely normal. He did not see any evidence of any injury to Janssen.

Dr. Smith, a physician, called as a witness by defendants, testified: He examined Janssen on October 24, 1956 (about six weeks after the accident), and found that he had more of a sway back than would be normally expected in a person 27 years of age. He concluded that Janssen was recovering from a strain of the lower back. He examined him again about four months after the accident and found that his condition was the same as it had been at the first examination. He gave Janssen the Ober's test and concluded that he was suffering

from excessive tightening of the fascia of the muscles of both thighs. He (doctor) was of the opinion that Janssen's symptoms were not the result of the accident.

■■■ Appellant Janssen argues that the verdict in his favor for $417 covered only his medical bill of $387 and his truck repair bill of $30; and since the jury did not award damages for loss of earnings or for pain and suffering, the verdict was the result of passion and prejudice on the part of the jury. In connection with that argument he refers to medical testimony and his own testimony concerning his injuries and inability to work. There was a conflict in the testimony as to the nature and extent of his alleged injuries. Some of the medical testimony was to the effect that he had been injured and that medical treatment was necessary. There was other medical testimony, however, to the contrary and to the effect that he had preexisting ailments. Dr. Smith said that Janssen was suffering from excessive tightening of the fascia of the muscles of both thighs, which ailment was not attributable to the accident; and that in his opinion Janssen's symptoms were not the result of the accident. Dr. Burgess said that Janssen had a mild curvature of the lower back, which ailment was not attributable to the accident. Dr. McGovney said he did not see any evidence of any injury.

The question as to amount of damages was a question of fact for the jury, and it was the duty of the jury to resolve the conflict in the evidence as to the nature and extent of the alleged injuries. The jury was not required to find that the amounts charged for medical services and for truck repairs were the reasonable and proper amounts to be allowed for such services or repairs. It is true that the amount of the Janssen verdict was the same amount as the total amount of those bills; but it cannot be said as a matter of law that the amount of the verdict did not include an allowance for loss of earnings and for pain and suffering. The jury might have found that the medical bill or the truck repair bill was excessive or that a part of the medical bill related to the preexisting ailments; and in such event, it might have regarded the total amount of those bills as sufficient to include the amount of damage, if any, sustained by Janssen for loss of earnings and for pain and suffering.

In *Adams* v. *Pacific Motor Trucking Co.*, 172 Cal.App.2d 505 [342 P.2d 351], the rear end of a pickup truck, operated by Adams, was struck by defendant's vehicle. Defendant admitted liability for damages, if any. The verdict in favor of

Adams was for $1,200. On his appeal he asserted that the damages were inadequate because there was uncontradicted evidence that he suffered a wage loss of $1,200, and had incurred medical expenses in the amount of $568.72; and there was evidence of pain and suffering. In upholding the verdict, the court said (pp. 506-507) : ''The question as to the amount of damages is a question of fact. In the first instance, it is for the jury to fix the amount of damages, and secondly, for the trial judge, on a motion for a new trial, to pass on the question of adequacy. Whether the contention is that the damages fixed by the jury are too high or too low, the determination of that question rests largely in the discretion of the trial judge. The appellate court has not seen or heard the witnesses, and has no power to pass upon their credibility. Normally, the appellate court has no power to interfere except when the facts before it suggest passion, prejudice or corruption upon the part of the jury, or where the uncontradicted evidence demonstrates that the award is insufficient as a matter of law. In determining whether there has been an abuse of discretion, the facts on the issue of damage most favorable to the respondent must be considered.'' In that case the court also said (p. 507) : ''Since there was no objective manifestation of Adams' injury and there was evidence of a preexisting arthritic condition and of preexisting back and shoulder complaints the jury could have reasonably concluded that portions of the claimed wage loss were not attributable to the accident.''

In the present case there was no objective manifestation of injury, and there was evidence of preexisting ailments. Immediately after the collision Janssen stood on the bumper of defendant's automobile and assisted in ''unlocking'' the vehicles. At the scene of the collision he said he had not been injured. The next day after the collision he worked until noon (as a tree trimmer). Also, the jury could take into consideration the force of the impact, and the age of Janssen (27 years of age). Also in the present case, the trial judge, in denying the motion for a new trial, passed on the adequacy of the award of damages. It cannot be said, as a matter of law, that the Janssen verdict was inadequate.

■■ Appellant Morseman asserts that the verdict as to him was incomprehensible. He argues that since his medical expenses amounted to $205, it is difficult to understand the verdict which was in his favor for ''None'' dollars. Morseman, 17 years of age, was a passenger in the truck. There was no objective manifestation of injury. He assisted in ''unlocking''

the vehicles. At the scene of the accident he said he had not been injured. He consulted a physician a week after the collision. He did not lose any time from his work as a doorman at a theater. He said that he quit school about a month after the collision because his eyes blurred. An eye specialist found that there was no evidence of eye damage. It is apparent from the Morseman verdict that the jury found that defendant Mrs. Mangum was negligent and liable for the damage, if any, resulting to Morseman, but the jury found further that he suffered no damage. Whether or not the collision caused injury to Morseman was a question of fact for the jury. The evidence was sufficient to support the verdict.

Under the circumstances here, it cannot be said that either verdict was the result of passion or prejudice on the part of the jury.

The judgment is affirmed.

Fourt, J., and Lillie J., concurred.