[Civ. No. 19237.   First Dist., Div. Two.   Oct. 11, 1961.]

FLOYD DIMMICK et al., Appellants, v. JOSE A. ALVAREZ et al., Respondents.

Johnson, Thorne, Speed & Bamford and John T. Thorne for Appellants.

Campbell, Custer, Warburton and Britton, Stanley Clark, Hoge, Fenton, Jones & Appel, Edwin D. Jones, Jr., George A. Strong and Ropers, Majeski & Kane for Respondents.

KAUFMAN, P. J.—Plaintiffs, Floyd Dimmick and his wife, Lillian, appeal from a judgment in their favor entered on a jury verdict, in their actions for property damage and personal injuries, and from the denial of their motion for a new trial. They contend that a new trial on the issue of damages should be granted to plaintiff, Lillian Dimmick, as the damages awarded are inadequate as a matter of law, and that both plaintiffs are entitled to a new trial because of conversation which occurred during the trial between defense counsel and members of the jury.

Turning first to the purported appeal from the order denying a new trial, such appeal must be dismissed inasmuch as no appeal lies from an order denying a motion for a new trial (*Reeves* v. *Reeves*, 34 Cal.2d 355 [209 P.2d 937]).

There is no dispute as to the facts of the accident which led to this litigation or on the issue of liability. The principal issue on this appeal is whether the damages awarded to Lillian Dimmick were inadequate as a matter of law.

At about 2 p.m. on April 21, 1957, all of the parties to this action were involved in a four car rear-end collision near the intersection of Main Street and the Bayshore Highway in Redwood City. The plaintiffs were stopped behind a car which was stopped behind a truck making a left turn. The plaintiffs' vehicle was struck in the rear by the vehicle driven by the defendant. Pedro Alma; Alma was struck in the rear by the vehicle driven by the defendant, Jose A. Alvarez, who, in turn, was struck in the rear by the vehicle driven by the defendant, A. J. Damschen, Jr., in the course and scope of his employment for the defendant Burroughs Corporation.

Plaintiff, Floyd Dimmick, sustained no personal injuries and sought damages of $50 for the amount of deductible collision insurance he paid for the repair of the automobile; plaintiff, Lillian Dimmick, sustained personal injuries and sought damages therefor. The jury returned a verdict in favor of plaintiff, Floyd Dimmick, for $50, in favor of plaintiff, Lillian Dimmick for $1,712.38 against the defendants,

Alvarez, Damschen and Burroughs, and absolved the defendant Alma of all liability.

The first argument on appeal is that the damages of $1,712.38 are inadequate as a matter of law because the jury disregarded certain specific items of pecuniary loss established by the evidence, and failed to award any damages for past and future pain and suffering.

The record indicates that at the time of the accident, Mrs. Dimmick was 52 years old. Immediately after the collisions, she was somewhat dazed, felt a severe pain in her back and neck; however, she refused the ambulance, and continued on to Sunnyvale with her husband to a dinner engagement with friends. The next day, she consulted Dr. Welsh, who examined her, had X-rays taken, and advised physical therapy. She received physical therapy treatments several times a week and took bufferin, aspirin and acetide for her pains for several months and continued her part-time job. Because the pain continued during the physical therapy, she again consulted Dr. Welsh in November, about seven months after her first visit. Dr. Welsh suggested that she consult Dr. Hull, an orthopedic surgeon. Dr. Hull, who first saw her on November 19, 1957, fitted her with several collars and recommended continuance of the therapy treatments. On October 13, 1958, Mrs. Dimmick entered the Palo Alto Hospital for 12 days. She was put in traction and received other treatment for her neck and back condition. Thereafter, she saw Dr. Hull at intervals of two to four weeks until the time of trial, received pain medicine and tranquilizers. The physical therapy also continued. Subsequently, Dr. Hull referred Mrs. Dimmick to Dr. Gutterman, an internist, for a physical examination. Dr. Gutterman discovered that she suffered from diverticulitis (a bowel condition). In May 1959, she became very ill with this condition and was hospitalized from August 10 to August 20, 1959. While she was in the hospital, Kenney packs were applied to her back and neck.

Dr. Hull testified that when he first saw Mrs. Dimmick on November 19, 1957, his extensive examinations and X-rays indicated no change in the contour of the spine, dislocation or broken bones; there were no muscle spasms or motor, reflex or sensory deficits. Dr. Hull, on the basis of Mrs. Dimmick's symptoms, history, his examination and the X-rays, concluded that she had a hypertrophic arthritic condition which must have existed before the accident, and on which was superimposed an extension-flexion type of injury to the cervical

spine and neck. He was of the opinion that the accident accelerated the preexisting hypertrophic process. He was unable, however, to indicate whether this accelerated rate and its symptoms would continue. Dr. Hull further testified that there was no direct relationship between the accident and the diverticulitis, although it might have had some bearing.

Plaintiffs here, relying on *Woods* v. *Eitze,* 94 Cal. App.2d 910 [212 P.2d 12]; *Uhl* v. *Baldwin,* 145 Cal.App.2d 547 [302 P.2d 841]; *Bauman* v. *City & County of San Francisco,* 42 Cal.App.2d 144 [108 P.2d 989]; and *Taylor* v. *Pole,* 16 Cal.2d 668 [107 P.2d 614], contend that since the award of $1,712.38 barely, if at all, covered the special damages, the trial court should have granted their motion for a new trial. ■ However, the amount of damages incurred is a question of fact for the jury (*Chaparkas* v. *Webb,* 178 Cal.App.2d 257, 259 [2 Cal.Rptr. 879]). ■ Here, while the plaintiffs offered evidence indicating medical expense of $2,163.20, there was offered evidence to show that the bill for the May 1959 hospitalization [$325.81] and for the services of Dr. Gutterman [$229] were not connected with the accident. Mrs. Dimmick herself testified about her operations and other symptoms from 1938 on and stated that she had had low back pains for a number of years before the accident of April 21, 1957. An orthopedic surgeon who examined her on behalf of the defendants testified that the relative degree of injury sustained by her in the accident was not extreme, but was "a rather minor type of neck sprain," from which one would expect constant improvement. Like Dr. Hull, this witness's opinion was that there was no relationship whatsoever between the accident and the diverticulitis. Conflicts in the evidence are to be resolved by the jury (*Morseman* v. *Mangum,* 177 Cal.App. 2d 218 [2 Cal.Rptr. 67]; *Neel* v. *San Antonio Community Hospital,* 176 Cal.App.2d 233, 235 [1 Cal. Rptr. 313]).

■ The applicable rules are aptly stated in *Gersick* v. *Shilling,* 97 Cal.App.2d 641 at page 645 [218 P.2d 583] as follows:

". . . The question as to the amount of damages is a question of fact. In the first instance, it is for the jury to fix the amount of damages, and secondly, for the trial judge, on a motion for a new trial, to pass on the question of adequacy. Whether the contention is that the damages fixed by the jury are too high or too low, the determination of that question rests largely in the discretion of the trial judge. The appellate

court has not seen or heard the witnesses, and has no power to pass upon their credibility. Normally, the appellate court has no power to interfere except when the facts before it suggest passion, prejudice or corruption upon the part of the jury, or where the uncontradicted evidence demonstrates that the award is insufficient as a matter of law. In determining whether there has been an abuse of discretion, the facts on the issue of damage most favorable to the respondent must be considered. . . ."

The contention that the damages are inadequate as a matter of law as the jury failed to award any general damages for pain and suffering is equally without merit. In fact, the award of $1,712.38 was $103.99 more than the total amount of special damages proved less the disputed bills for the second hospitalization and Dr. Gutterman. Thus, it could be inferred that the jury found the general damages to be $103.99.

In returning a verdict in favor of the plaintiffs, it is not necessary that the jury award any amount of damages (*Morseman* v. *Mangum, supra,* 177 Cal.App.2d 218; *Chaparkas* v. *Webb, supra,* 178 Cal.App.2d 257). Plaintiffs further argue that the necessity and reasonableness of the medical bills may not be questioned as the defendants offered no evidence on these matters, thus leaving the evidence undisputed. However, the trier of fact may reject the uncontradicted testimony of a witness provided he does not act arbitrarily (*Kraut* v. *Cornell,* 175 Cal.App.2d 528 [346 P.2d 438]). Nor is it necessary that the amount of the award equal the alleged medical expenses for it has long been the rule that the costs alone of medical treatment and hospitalization do not govern the recovery of such expenses. It must be shown additionally that the services were attributable to the accident, that they were necessary, and that the charges for such services were reasonable (*Gimbel* v. *Laramie,* 181 Cal.App.2d 77, 79 [5 Cal.Rptr. 88]). Here, it appears from the evidence and verdict that the jury believed not all of the medical expenses were attributable to the accident. The evidence clearly supports the amount of the verdict.

The next argument is that the trial court abused its discretion in denying a new trial because of the following occurrence: After the case was submitted to the jury, the plaintiffs' attorney informed the court that during recess, he had observed conversations between members of the jury and Mr. Majeski, counsel for the defendant Alma, and Mr. Clark, counsel for the defendant Alvarez, and that after one of these

occurrences, Mr. Clark rushed over to tell him that "they were only exchanging comments." Mr. Clark explained to the court that the juror had asked him if he could ask a question and was told that he did not think it a good idea in light of the court's admonition. When Mr. Clark suggested to the court that the jurors involved be questioned, plaintiffs' attorney indicated that he was only stating the matter for the record.

While the courts cannot be too strict in guarding jury trials from improper influences (*Wright* v. *Eastlick,* 125 Cal. 517 [58 P. 87]), the mere fact that a few words were spoken between an attorney and a member of the jury does not in itself amount to prejudicial misconduct (see *Jackson* v. *Barnett,* 160 Cal.App.2d 167, 171 [324 P.2d 643] ; *Bryant* v. *Tulare Ice Co.,* 125 Cal.App.2d 566, 571 [270 P.2d 880]). Here, the record indicates that the juror never asked the intended question.

The record further indicates that although plaintiffs' counsel was made aware of the conversation at the time it took place, he displayed no interest in discovering the nature of the conversation and waited until after the case had been submitted to the jury to call it to the attention of the court. Even then, he made no objection but merely stated he wanted it in the record. By failing to object and by failing to ask for a mistrial at the time the fact of the conversation came to his attention, plaintiffs' counsel waived any right he might have had for a new trial or reversal of the judgment on that ground (*Nafus* v. *Freight Construction etc. Union,* 182 Cal. App.2d 120 [5 Cal.Rptr. 924]).

Judgment affirmed.

Appeal from denial of motion for new trial dismissed.

Shoemaker, J., and Agee, J., concurred.

A petition for a rehearing was denied November 10, 1961, and the petition of appellant Lillian Dimmick for a hearing by the Supreme Court was denied December 6, 1961.