Filed 3/3/22  Shed v. Orange County Transportation Auth. CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| ANTONIA SHED,<br><br>    Plaintiff and Appellant,<br><br>        v.<br><br>ORANGE COUNTY<br>TRANSPORTATION AUTHORITY,<br><br>    Defendant and Respondent. | G060109<br><br>(Super. Ct. No. 30-2015-00781660)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Layne H. Melzer, Judge.  Affirmed.

Donna Bader for Plaintiff and Appellant.

Woodruff, Spradlin & Smart, Caroline A. Byrne and Roberta A. Kraus, for Defendant and Respondent.

In August 2014, Antonia Shed was a passenger on a bus operated by the Orange County Transportation Authority (OCTA) and suffered an injury to her foot when the coach's driver activated the wheelchair ramp. Shed filed a complaint against OCTA for negligence and other claims. Following a bench trial, the court found OCTA failed to exercise reasonable care and Shed was injured as a result. However, the court entered judgment in favor of OCTA because Shed failed to prove damages. Shed presented no evidence of economic damages but argued she was entitled to noneconomic damages for long-term pain and suffering. The trial court rejected this argument because Shed's evidence failed to show any continuing injury or pain and suffering attributable to the incident on the bus. Shed contends the judgment must be reversed because she presented "reasonable evidence of her pain and suffering." We disagree and affirm the judgment.

FACTS

Shed took an OCTA bus to Fullerton. At her stop, Shed and other riders prepared to disembark at the front of the bus, while people waited on the sidewalk to embark. One of the bus's passengers was in a wheelchair. As Shed was walking toward the bus's front exit, she heard a beeping noise and a buzzer that said something like "wheelchair assistance." She believed the beeping noise indicated the bus was being lowered to allow people to embark. Actually, the beeping noise was for the opening wheelchair ramp, which had been activated by the bus's driver.[1]

As Shed approached the bus's front exit, she turned to the driver and said, "thank you." She did not see the wheelchair ramp opening. Shed's right foot went between the ramp's two metal plates. Apparently unaware of this, Shed continued

---

[1]     We have reviewed a video of the incident recorded from the bus's interior. In the video, it appears the wheelchair ramp is one metal plate hinged to another, with the hinge near the bus's door. Unless the wheelchair ramp is engaged, the two metal plates lie on top of one another and there is no gap between them. Once activated, the top metal plate lifts up, travels 180 degrees, and descends to the sidewalk.

toward the bus's exit, stepping her left foot onto the plate that had just started rising. This forced the plate down onto her right foot toes.[2] Shed started to fall but regained her balance and stepped back with her left foot. Her right foot toes were caught between the two plates. Shed told the driver her foot was caught and asked her to open the ramp. The plate moved down instead and cut into Shed's toes. On the video recording, Shed can be heard saying, "my toe, my toe, my toe." She again asked the driver to open the ramp.

After the ramp opened, Shed looked down and saw her foot was bleeding. The driver asked Shed if she was alright. Shed showed her foot to the driver, who apologized, and Shed disembarked. She took another bus to the emergency room because her foot hurt.

At the hospital, Shed's foot was x-rayed. Her toe was not broken, and she received no stitches. The wound was cleaned, but the cleaning was so painful Shed believed there was nerve damage. Her foot was not wrapped. Instead, she was given a boot, which covered her foot, not her toes.

A couple of days later, Shed saw her physician, who sent her to a podiatrist. The podiatrist recommended physical therapy and wearing open-toed shoes. Shed saw another podiatrist and a neurologist. The neurologist recommended physical therapy and to keep her foot moving.

In a first amended complaint, Shed alleged the following causes of action against OCTA: (1) motor vehicle negligence; (2) premises liability for a public entity; and (3) general negligence of a public employee. She alleged she had suffered loss of wages, use of property, and earning capacity, hospital and medical expenses, and general and property damages. OCTA answered and denied the allegations.[3]

---

[2]        In the video, it appears Shed is wearing open-toed shoes.

[3]        The County of Orange was also named as a defendant. The appellate record does not show the county took part in any of the proceedings below, and it is not a party to this appeal.

The parties stipulated Shed was a passenger on an OCTA bus at the time the injury occurred. In a joint statement of the case, OCTA conceded video from the bus showed Shed's right toe was briefly caught as the bus driver attempted to lower the wheelchair ramp. OCTA, however, disputed the extent of Shed's injuries and the reasonable necessity of her medical bills. The parties filed a joint list of controverted issues, identifying the following: (1) whether and to what extent OCTA was negligent; (2) whether Shed was comparatively negligent; (3) the nature and extent of Shed's injuries; and (4) the reasonableness and necessity of Shed's medical bills.

OCTA filed several motions in limine. The court granted OCTA's motion to exclude the gross amount of Shed's medical bills but denied its request to exclude evidence of the amount Shed's private insurance paid, consistent with *Howell v. Hamilton Meats & Provisions, Inc.* (2011) 52 Cal.4th 541.[4] The court also denied OCTA's motion to exclude treatment records and medical bills Shed received after the close of discovery. OCTA's motion to exclude the testimony of non-designated experts was deemed moot after Shed's counsel indicated she was not going to present any expert witnesses.

A court trial was held in September 2020. Shed testified and described the incident on the bus. She explained her foot was bleeding after it was caught in the wheelchair ramp, and she limped off the bus in pain. She immediately went to the hospital for her foot. Shed explained she had seen multiple medical professionals for her injury and physical therapy had been recommended for treatment. At the time of trial, six years after the accident, Shed was still going to physical therapy once a week. Since the incident, Shed was limited in how far she could walk. She also testified she had

---

[4]     A summary attached to OCTA's motion indicated Shed had been charged and her insurance had paid $1,427 for medical services from the date of the event to October 2, 2017.

"limitations" on her normal activities but did not explain what activities were limited other than taking long walks.

After Shed's testimony, her counsel rested without presenting evidence of Shed's medical bills. OCTA's counsel moved for nonsuit because Shed had not introduced evidence of economic damages. Denying the motion, the court indicated Shed could argue she was entitled to noneconomic damages despite the absence of evidence of economic damages.

Dr. Robert Baird, a board certified orthopedic surgeon testified on behalf of OCTA. He had conducted an orthopedic evaluation of Shed about 22 months after the incident and prepared a report. In doing so, he reviewed the bus video and Shed's medical records, including her x-rays.

Baird's report stated Shed complained "of a burning in her toes, foot and knee, right knee pain, and tingling in her right lateral calf." She also complained of ankle pain, which she attributed to twisting her ankle on the bus. However, she did not notice any swelling when the event occurred. The pain in her right knee began several days after the incident. Shed believed her knee pain was the result of altered body mechanics from walking in the boot she was given at the hospital. Shed reported the tingling sensation in her calf also started a few days later. She told Baird she was given pain medication at the hospital. But by the time of Baird's examination, Shed was no longer taking pain medication for the injury. Shed informed Baird one of her doctors had recommended surgery, but she did not know what kind.

Baird's report noted Shed had been involved in a motor vehicle accident in 2006, in which "her right ankle was jarred and her right knee was 'aggravated.'" A medical report from 2008 indicated she had previously complained of symptoms like those she reported after the bus incident. In 2009, Shed had arthroscopic surgery on her right knee. After that procedure, she continued to complain of pain. Shed reported to

5

Baird her right knee had finally gotten better and was asymptomatic prior to the bus incident.

Based upon his examination of Shed and review of her medical records, Baird opined Shed sustained a contusion and a minor abrasion over the top of her right foot toes. The cut was superficial, did not require sutures, and left no apparent scarring. Baird found no indication Shed suffered any nerve damage from the bus incident. He found no evidence of a relationship between Shed's complaints of pain in her right ankle, knee, or leg and the accident on the bus.

Baird, however, concluded Shed had preexisting conditions, which he opined were responsible for her complaints of continuing pain and tingling in her right foot and leg. Her preexisting conditions included: (1) cervical thoracal lumbar scoliosis; (2) degenerative disc disease of the lumbar spine; (3) probable right lower extremity radiculopathy secondary to her degenerative disc disease; and (4) probable degenerative joint disease with patella femoral findings of the right knee. Baird explained radiculopathy is an irritation of one of the spinal nerves going from the lumbar spine to the foot and causes pain, numbness, and tingling. He noted Shed was taking a nerve medication prior to the bus incident. In Baird's opinion, the accident on the bus did not exacerbate Shed's preexisting conditions.

In closing arguments, Shed's counsel argued OCTA had admitted fault, Shed suffered an injury as a result of OCTA's fault, and therefore, Shed was entitled to an unspecified amount of damages. Counsel asserted it was undisputed Shed saw a doctor, went to physical therapy for her injury, and was still receiving physical therapy. Counsel contended Shed was still suffering from the accident and her pain would continue after the trial. Counsel acknowledged Shed's medical bills were not introduced but argued even if Shed was not awarded economic damages, she was entitled to noneconomic damages because she had "suffered greatly" and "her pain [had] been long lasting." Addressing Baird's opinion testimony, counsel asserted Baird's conclusions

6

differed from those of Shed's primarily care physicians. Counsel argued Shed's preexisting conditions did not prevent the recovery of damages because the accident exacerbated her preexisting conditions.

OCTA's counsel indicated OCTA was willing to pay for reasonable and necessary treatment for the cut to Shed's toe, which it asserted was only her E.R. visit. But counsel noted the court had no evidence of Shed's economic damages because she had failed to present any evidence on this issue.

The court issued an oral ruling, finding Shed exercised reasonable care as she existed the bus and was injured as a result of OCTA failing to exercise reasonable care. The court indicated beyond that conclusion was a "significant problem" because it had not received evidence of economic damages. Finding Shed had failed to prove her case, the court stated:

"So, I have no evidence of damages. I don't have evidence of non-economic damages other than statements, argument that there's ongoing treatment, ongoing issues with respect to Ms. Shed's mobility.

"I can accept that there may well be ongoing issues with Ms. Shed's mobility. The problem is in a case like this, I've got unrebutted testimony from an expert physician regarding the cause of those ongoing problems.

"I have zero medical testimony from [Shed], and this is a case where medical testimony, in terms of ongoing problems, is critical. I don't need medical testimony to tell me that there was a contusion or there was a cut or there was an injury.

"But when anyone is attempting to link an injury to ongoing medical treatment, it's incumbent upon the plaintiff, who does have the burden of proof, to present some sort of testimony that would support that ongoing treatment. Particularly where I do have a medical expert, who has identif[ied] neurological conditions and that expert is -- has proffered the unrebutted conclusion that any nerve damage or ongoing

7

injury to Ms. Shed [is] a result of this neurologic condition, which ultimately is a spinal degenerative condition.

"So, unfortunately under the circumstance of this case, while I would conclude that there was -- the injury was caused by a lack of ordinary or reasonable care on behalf of [OCTA], I have no evidence sufficient to support damages in any amount and for that reason the court finds [Shed] has failed to meet her burden of proof as it relates to damages. In which case, the court is obligated to enter a [judgment] in favor of [OCTA] under the circumstances of this case and the evidence presented to [the court]."

After the court entered judgment in favor of OCTA, Shed appealed.

DISCUSSION

Shed seeks reversal of the judgment on the ground it is not supported by substantial evidence. She contends she presented "enough evidence of her immediate pain and suffering, as well as the long-term suffering[] that has impacted her life[,]" and therefore, the court erred by not awarding her noneconomic damages. We disagree.

I. *Standard of Review*

"'We generally apply the familiar substantial evidence test when the sufficiency of the evidence is at issue on appeal. Under this test, "'we are bound by the established rules of appellate review that all factual matters will be viewed most favorably to the prevailing party [citations] and in support of the judgment . . . . "In brief, the appellate court ordinarily *looks only at the evidence supporting the successful party, and disregards the contrary showing*." [Citation.] All conflicts, therefore, must be resolved in favor of the respondent.'" [Citation.]

"'But this test is typically implicated when a defendant contends that the plaintiff succeeded at trial in spite of insufficient evidence. In the case where the trier of fact has expressly or implicitly concluded that the party with the burden of proof did not carry the burden and that party appeals, it is misleading to characterize the failure-of-proof issue as whether substantial evidence supports the judgment. This follows because

8

such a characterization is conceptually one that allows an attack on (1) the evidence supporting the party who had no burden of proof, and (2) the trier of fact's unassailable conclusion that the party with the burden did not prove one or more elements of the case [citations].

"'Thus, where the issue on appeal turns on a failure of proof at trial, the question for a reviewing court becomes whether the evidence compels a finding in favor of the appellant as a matter of law. [Citations.] Specifically, the question becomes whether the appellant's evidence was (1) "uncontradicted and unimpeached" and (2) "of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding."' [Citation.]" (*Sonic Manufacturing Technologies, Inc. v. AAE Systems, Inc.* (2011) 196 Cal.App.4th 456, 465-466 (*Sonic*).)

II. *Shed Failed to Prove She was Entitled to Damages*

Applying the above standard of review, we conclude the evidence does not compel a finding in Shed's favor as a matter of law. The trial court rendered judgment in favor of OCTA because Shed failed to prove damages. It is well established "the plaintiff has the burden of proving, with reasonable certainty, the damages actually sustained by [her] as a result of the defendant's wrongful act, and the extent of such damages must be proved as a fact. The burden thus placed on the plaintiff is in no way lessened by [her] presentation of a prima facie case of negligence against the defendant. [Citation.]" (*Chaparkas v. Webb* (1960) 178 Cal.App.2d 257, 258-259 [affirming judgment where jury found defendant negligent but awarded plaintiff no damages]; *Morseman v. Mangum* (1960) 177 Cal.App.2d 218, 223-224 [same].) Shed acknowledges there was no evidence of economic damages, but she contends the trial court should have awarded her noneconomic damages for pain and suffering.

"Noneconomic damages compensate an injured plaintiff for nonpecuniary injuries, including pain and suffering. Pain and suffering is a unitary concept that encompasses physical pain and various forms of mental anguish and emotional distress.

9

[Citation.] Such injuries are subjective, and the determination of the amount of damages by the trier of fact is equally subjective. [Citation.] There is no fixed standard to determine the amount of noneconomic damages. Instead, the determination is committed to the discretion of the trier of fact. [Citations.] [¶] This is no easy task. . . . "'The chief reliance for reaching reasonable results in attempting to value suffering in terms of money must be the restraint and common sense of the [trier of fact]. . . ." [Citation.]' [Citation.]" (*Corenbaum v. Lampkin* (2013) 215 Cal.App.4th 1308, 1332-1333.)

Whether an award is legally inadequate for failing to include pain and suffering damages requires consideration of factual questions concerning the nature and extent of the injuries caused by the defendant's negligence. (*Dodson v. J. Pacific, Inc.* (2007) 154 Cal.App.4th 931, 936-937 (*Dodson*); *Miller v. San Diego Gas & Electric Co.* (1963) 212 Cal.App.2d 555, 558-559 (*Miller*).) "Every case depends upon the facts involved." (*Miller, supra*, 212 Cal.App.2d at p. 558.) Generally, "[c]ases finding an award inadequate for failure to account for pain and suffering 'involve[] situations where the right to recover was established and . . . there was also proof that the medical expenses were incurred because of defendant's negligent act.' [Citation.]" (*Dodson, supra*, 154 Cal.App.4th at p. 937.)

After reviewing the record, we conclude Shed failed to carry her burden of proving her noneconomic damages for either her immediate pain or long-term suffering. We first consider Shed's contention the court should have awarded her noneconomic damages because she presented sufficient evidence of her immediate pain when the injury occurred. Relying on her testimony her foot was bleeding, she limped off the bus in pain, and went to the hospital, Shed asserts it was undisputed she was in pain at the moment the injury occurred. The only undisputed evidence concerning Shed's injuries was that she suffered a contusion and abrasion to her right foot toes, which did not require stitches. The nature and extent of this injury were not so substantial as to compel the trial court to award her damages for pain and suffering. (Contra, *Dodson, supra*, 154

10

Cal.App.4th at pp. 932-933 [failure to award any damages for pain and suffering inadequate as matter of law where plaintiff underwent surgery following accident and must have endured some pain and suffering].) As we see it, Shed's injury was akin to someone closing a door on your fingers. It is painful. Sometimes your finger is cut and bleeds. But it is generally a de minimis injury and not the type where noneconomic damages must be awarded as a matter of law.

At best, Shed would be entitled to nominal damages for her pain and suffering at the moment the injury occurred. However, the trial court's failure to award nominal damages does not get Shed the reversal she seeks. There is a "general 'harmless error' rule" providing "'a judgment will not be reversed for a failure to award nominal damages . . . .' [Citation.]" (*Choate v. County of Orange* (2000) 86 Cal.App.4th 312, 332-333.) In conformance with this rule, we will not reverse the judgment based on the trial court's failure to award Shed nominal pain and suffering damages for her momentary pain.

Next, we consider Shed's contention the evidence of her long-term pain and suffering was sufficient to warrant an award for noneconomic damages. Applying the appropriate standard of review, the question is whether Shed's evidence of her long-term pain and suffering was unimpeached and uncontradicted and of such a weight and character as to leave no room for a determination it was insufficient. (*Sonic, supra*, 196 Cal.App.4th at p. 466.) It was not. There were evidentiary conflicts on the issue of whether Shed endured long-term pain and suffering because of the accident on the bus. Shed testified she was still going to physical therapy once a week at the time of trial based upon the recommendation of her neurologist. But she presented no evidence linking her need for physical therapy to the accident on the bus, especially six years later. Baird, OCTA's expert, testified Shed's complaints of ongoing pain were attributable to her preexisting conditions and unrelated to the incident on the bus. The trial court found

11

Baird's testimony credible and unrebutted.  We conclude Shed's evidence was insufficient and the trial court was not required to award her noneconomic damages.

Essentially, Shed is requesting we reexamine the evidence and reach a conclusion different than the trial court.  Such an argument "'misapprehends our role as an appellate court.'"  (*Pfeifer v. John Crane, Inc.* (2013) 220 Cal.App.4th 1270, 1301.) "Venerable precedent holds that, in a bench trial, the trial court is the 'sole judge' of witness credibility.  [Citation.]  The trial judge may believe or disbelieve uncontradicted witnesses if there is any rational ground for doing so.  [Citation.]  The fact finder's determination of the veracity of a witness is final.  [Citation.]" (*Schmidt v. Superior Court* (2020) 44 Cal.App.5th 570, 582.)  We will not reevaluate the evidence to reach a conclusion contrary to that made by the trial court.

DISPOSITION

We affirm the judgment.  Respondent shall recover its costs on appeal.

O'LEARY, P. J.

WE CONCUR:

BEDSWORTH, J.

GOETHALS, J.

12