*Tami Browne v. State Farm Mutual Automobile Insurance Co.*, No. 1825, September Term, 2021. Opinion by Adkins, Sally D., J.

**HEADNOTES:**

INSURANCE LAW – ADMINISTRATIVE & JUDICIAL REMEDIES FOR LACK OF GOOD FAITH – APPLICATION OF COLLATERAL ESTOPPEL

Administrative and judicial remedies are available to a first-party insured against an insurer who fails to act in good faith under Md. Code (1995, 2017 Repl. Vol.) § 27-1001 of the Insurance Article and Md. Code (1974, 2020 Repl. Vol.) § 3-1701 of the Courts and Judicial Proceedings Article. An insured must first receive a final decision before bringing a civil action claiming lack of good faith in circuit court. The initial decision from the Maryland Insurance Administration may become final or a final decision may be issued from the Office of Administrative Hearings. The doctrine of collateral estoppel does not bar an insured from bringing a civil action for lack of good faith following an adverse decision from the Office of Administrative Hearings.

TORTS – SCOPE OF LIABILITY – SUBSEQUENT NEGLIGENT MEDICAL TREATMENT

An original tortfeasor remains liable for subsequent negligent medical treatment of the original injury unless the subsequent treatment is a superseding cause. The subsequent treatment may be a superseding cause in the following instances: (1) extraordinary misconduct by medical professionals, (2) intentional torts committed by medical professionals against the victim, (3) a victim's elected treatment of an ailment known to be unrelated to the injuries caused by the negligent actor, (4) treatment by a medical professional the victim was negligent in selecting, and (5) aggravation of the injury due to the victim's negligence in carrying out the treatment of her injuries.

TORTS – DAMAGES – REQUIREMENT THAT MEDICAL BILLS BE FAIR, REASONABLE, AND NECESSARY

The requirement that medical bills be fair, reasonable, and necessary is an evidentiary safeguard to ensure that a plaintiff lays a proper foundation to introduce the bills as evidence of damages. When the issue of subsequent negligent medical treatment is involved, the "necessary" requirement means "causally related" or "proximately resulted from" the original injury.

TORTS – SCOPE OF LIABILITY – SUBSEQUENT NEGLIGENT MEDICAL TREATMENT – BURDENS OF PROOF

A defendant seeking to alleviate its liability based on subsequent negligent medical treatment has the burden of production on that issue. The ultimate burden of persuasion on the element of causation remains with the plaintiff.

Circuit Court for Montgomery County
Case No. 475045V

REPORTED

IN THE APPELLATE COURT

OF MARYLAND*

No. 1825

September Term, 2021

_____

TAMI BROWNE

v.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY

_____

Berger,
Friedman,
Adkins, Sally D.
(Senior Judge, Specially Assigned),

JJ.

_____

Opinion by Adkins, Sally D., J.

_____

Pursuant to the Maryland Uniform Electronic Legal Materials Act (§§ 10-1601 et seq. of the State Government Article) this document is authentic.

Filed: July 27, 2023



Gregory Hilton, Clerk

*At the November 8, 2022 general election, the voters of Maryland ratified a constitutional amendment changing the name of the Court of Special Appeals of Maryland to the Appellate Court of Maryland. The name change took effect on December 14, 2022.

This appeal requires us to review two interconnected statutes: Md. Code (1995, 2017 Repl. Vol.) § 27-1001 of the Insurance Article ("IN") and Md. Code (1974, 2020 Repl. Vol.) § 3-1701 of the Courts and Judicial Proceedings Article ("CJP"). In 2007, the General Assembly enacted the complementary statutes to "creat[e] administrative and judicial remedies for a first-party insured against a[n] . . . insurer who fails to act in good faith in denying coverage or declining payment for a covered loss." *Thompson v. State Farm Mut. Auto. Ins. Co.*, 196 Md. App. 235, 238 (2010). The crux of this appeal involves the procedures required for an insured to avail herself of the lack of good faith claim available against her insurer.

CJP § 3-1701 allows an insured to file a civil action alleging lack of good faith against the insurer but "not . . . before the date of a final decision under § 27-1001 of the Insurance Article." CJP § 3-1701(c). IN § 27-1001 first requires the insured to file a complaint with the Maryland Insurance Administration ("MIA"), after which the MIA must issue a decision. IN § 27-1001(d)(1), (e)(1). It then provides two ways for that decision to become "final." First, the MIA's decision becomes final if the party that receives an adverse decision does not request an administrative hearing within 30 days of the MIA's decision. IN § 27-1001(f)(3). Second, if an administrative hearing is requested, that hearing results in a final decision from the Office of Administrative Hearings ("OAH"). IN § 27-1001(f)(1)–(2). The statute also allows a party that receives an adverse decision from either the MIA or the OAH to petition for judicial review of the decision. IN §§ 27-1001(g); 2-215(d).

The Appellant—Tami Browne—suffered injuries from an automobile accident where the at-fault driver fled the scene. She filed a claim with her insurer—the Appellee—State Farm Mutual Automobile Insurance Company ("State Farm"). When the parties were unable to settle the claim, Browne filed a breach of contract action against State Farm in the Circuit Court for Montgomery County.

While the breach of contract action was pending, she also filed an administrative complaint against State Farm for failure to act in good faith under IN § 27-1001 and CJP § 3-1701. The MIA determined (1) the amount that State Farm owed Browne, which was under the policy limit, and (2) that State Farm had not failed to act in good faith. Browne appealed the decision to the OAH, which affirmed the MIA's decision.

Browne then amended her original breach of contract action in the circuit court to include the statutory lack of good faith claim under CJP § 3-1701. Following dispositive motions made by the parties, the circuit court granted summary judgment in favor of State Farm, ruling that the OAH decision collaterally estopped Browne from litigating the civil action involving the same issues that were decided in the OAH decision. According to the circuit court, once Browne received the adverse MIA decision, she had a choice to request a hearing with the OAH or to file the lack of good faith claim in circuit court. By choosing to proceed to the OAH, collateral estoppel prohibited her from relitigating her claims in the CJP § 3-1701 action. Her only choice, said the court, was to petition for judicial review of the OAH decision. The court then denied Browne's motion for summary judgment as moot.

Browne asks us[1] to resolve the following questions, which we have revised for clarity:

1. Whether the circuit court erred in granting State Farm's motion for summary judgment on the basis that the OAH decision collaterally estopped Browne from litigating her breach of contract and lack of good faith claims;

2. Whether the circuit court erred in denying Browne's motion for summary judgment because State Farm was liable for any negligent medical treatment she received; and

3. Whether a lack of good faith claim may be sustained where an insurer tenders partial payment on a claim.

We conclude that the circuit court erred in ruling that the OAH decision collaterally estopped Browne from litigating her breach of contract and lack of good faith claims. We therefore reverse the judgment of the circuit court. We also vacate the circuit court's denial

---

[1] Browne presented the following questions in her brief:

1. Did the OAH's decision issued under [IN] Section 27-1001 have any collateral estoppel effect in Ms. Browne's administrative appeal of the same decision, in the Circuit Court, pursuant to CJP Section 3-1701?

2. Where there is no genuine dispute that Ms. Browne underwent surgery in an attempt to treat injuries for which her uninsured motorist carrier is concededly liable, did the trial court abuse its discretion by not granting her summary judgment that the carrier is also liable for additional injuries and damages that the carrier contends were caused by the surgery?

3. Is a claim for lack of good faith under CJP Section 3-1701 legally precluded whenever the insurer tenders some amount of payment to its insured?

of Browne's motion for summary judgment because of its flawed reasoning that the motion was moot and offer additional guidance on the issue of an original tortfeasor's liability for subsequent negligent medical treatment. We do not offer guidance on the third issue as this was not addressed by the circuit court. Thus, we remand the case for renewed consideration of Browne's motion for summary judgment and for further proceedings consistent with this opinion.

## FACTS & PROCEDURAL HISTORY

*Browne's Accident & Injuries*

On May 17, 2018, Browne suffered injuries in an automobile accident as she rode in the front passenger seat of a vehicle owned and driven by her husband. At the time of the accident, the vehicle was stopped at a red traffic signal when an unidentified driver rear-ended the vehicle. The unidentified driver remained on the scene when paramedics arrived but had fled by the time police responded.

Browne went to the emergency room at Holy Cross Hospital complaining of lower back and right-side neck pain. She was discharged with pain medication and instructed to follow up with her primary care physician. She saw her primary care physician on May 24, 2018, and reported low back, hip, and neck pain. The physician prescribed some medication and referred Browne to physical therapy. Browne underwent three months of non-surgical treatment but continued to complain of lower back, neck, and hip pain, as well as other symptoms.

In July 2018, her doctor ordered an MRI which revealed a Tarlov cyst along the sacral nerve roots, as well as a protruding disc at L4–L5. Browne returned to her primary

care physician and complained of continued hip pain and leg weakness. She was referred to a neurosurgeon. She sought treatment from Dr. Robert Rosenbaum, who performed surgery to remove her Tarlov cyst.

Browne initially reported that some of her symptoms had improved, but she later experienced worsening pain, ongoing numbness, tingling, and weakness in her legs. After the surgery, she resumed non-surgical treatments for her pain.

At the time of the accident, State Farm insured the vehicle in which Browne was a passenger. The policy provided uninsured/underinsured motorist coverage of $50,000 per person. The policy language read,

> **We** will pay compensatory damages for **bodily injury** and **property damage** an **insured** is legally entitled to recover from the owner or driver of an **uninsured motor vehicle**. The **bodily injury** must be sustained by an insured. The **bodily injury** and **property damage** must be caused by an accident arising out of the ownership, maintenance, or use of an **uninsured motor vehicle** as a motor vehicle.

On April 3, 2019, Browne sent a demand letter to State Farm for its policy limit amount based on $53,566.54 of medical bills associated with the accident. In July, State Farm initially offered Browne $5,500 to settle her claim and noted that the demand included no documentation that connected the Tarlov cyst surgery to the accident. Browne reiterated the original demand for medical expenses and demanded a "reasonable offer" from State Farm. To connect the Tarlov cyst surgery to the accident, she relied on the absence of complaints about the Tarlov cyst in her medical records before the accident but did not otherwise provide documentation connecting the surgery to the accident.

On November 5, 2019, Browne filed suit in the Circuit Court for Montgomery County for breach of contract, seeking uninsured motorist benefits of $50,000. In her deposition, Browne said that Dr. Rosenbaum would testify that the accident aggravated her Tarlov cyst. Rosenbaum confirmed his opinion in his deposition that the trauma from Browne's car accident aggravated her Tarlov cyst and necessitated the surgery he performed.

In preparation for trial, State Farm requested that a neurosurgeon—Dr. Matthew Ammerman—examine Browne. Based on his examination of Browne and her medical documents, Dr. Ammerman issued a report on August 25, 2020, which concluded that the nonoperative treatment for Browne's injuries—such as physical therapy, lumbar injections, and acupuncture—were medically necessary and causally related to the accident. But he concluded that the Tarlov cyst surgery was "in no way related to the accident" and "was not medically necessary or causally related to the . . . accident." On October 21, 2020, State Farm increased its settlement offer to $20,885.30. Ammerman later opined in his deposition that the Tarlov cyst removal had caused additional symptoms apart from those related to the accident.

*Administrative Proceedings*

On March 2, 2021, Browne submitted her administrative lack of good faith complaint under IN § 27-1001 with the MIA.[2] She again sought the $50,000 policy limit,

---

[2] The complaint was received by the MIA on March 3, 2021.

plus expenses and litigation costs, and submitted medical bills totaling $88,537.09. She further asserted that State Farm had no reasonable basis to offer less than the $50,000 policy limit to settle the claim. State Farm responded that Browne's Tarlov cyst surgery and her subsequent treatment were not related to the accident and that it had made a reasonable offer.

The MIA found that Browne was entitled to $27,442.71 for pre-surgery medical expenses, lost wages, and non-economic damages, plus interest of $2,067.60, totaling $29,510.31. However, it rejected her claim for surgical expenses and post-surgery injuries and damages because she had not demonstrated that they were causally related to the accident. The MIA also found that Browne had failed to meet her burden of showing that State Farm failed to act in good faith in settling her claim. State Farm paid Browne the amount of the MIA award, and the parties agreed this would not preclude her from continuing litigation to seek the full policy amount.

Browne requested a de novo hearing before the OAH, and an administrative law judge ("ALJ") conducted a hearing on August 16, 2021. The ALJ considered the deposition testimony from both Dr. Ammerman and Dr. Rosenbaum[3] and reached the same decision as the MIA. The ALJ "f[ou]nd Dr. Ammerman's opinion that the accident could not have caused the cyst to become symptomatic more thorough and more convincing"

---

[3] The MIA did not have Dr. Rosenbaum's deposition testimony as part of its record, but the ALJ admitted it at the OAH hearing over State Farm's objection.

and awarded Browne the same monetary award the MIA had.  The ALJ likewise found that State Farm had not failed to act in good faith.[4]

*Circuit Court Dismissal*

After the OAH hearing, Browne moved to amend her pending breach of contract claim against State Farm to add the lack of good faith claim.  Browne also filed a petition for judicial review of the OAH decision within 30 days of the decision and moved to consolidate the two actions.  After the circuit court granted the motion to add the lack of good faith claim to the breach of contract claim, Browne dismissed the petition for judicial review and withdrew the motion to consolidate.

Browne moved for summary judgment on her breach of contract claim.  She argued that, as a matter of law, the accident was the proximate cause of her post-surgery injuries and damages.  State Farm opposed the motion and filed a cross-motion for summary judgment.  State Farm contended that the OAH decision collaterally estopped Browne from maintaining her lawsuit in circuit court and that Dr. Rosenbaum's surgery was a superseding cause of some of Browne's injuries.

After a hearing, the circuit court granted State Farm's cross-motion for summary judgment, ruling that the OAH decision collaterally estopped Browne from continuing with

---

[4] The OAH decision was followed by a page titled "Review Rights," which stated that "[a] party aggrieved by this final decision may file a civil action pursuant to section 3-1701 of the Courts and Judicial Proceedings Article or may file a petition for judicial review with . . . the circuit court . . . . Md. Code Ann., Cts. & Jud. Proc. § 3-1701(c) (2020); Md. Code Ann., Ins. § 27-1001(g) (Supp. 2020)."

the pending lawsuit.  The court denied Brown's motion for summary judgment as moot.

Brown timely appealed.

## STANDARD OF REVIEW

The standard we use to review a circuit court's grant of summary judgment is well-established:

> With respect to the trial court's grant of a motion for summary judgment, the standard of review is de novo.  Prior to determining whether the trial court was legally correct, an appellate court must first determine whether there is any genuine dispute of material facts.  Any factual dispute is resolved in favor of the non-moving party.  Only when there is any absence of a genuine dispute of material fact will the appellate court determine whether the trial court was correct as a matter of law.

*Dashiell v. Meeks*, 396 Md. 149, 163 (2006) (internal citations omitted) (emphasis removed).  In addition, "[t]he application of collateral estoppel . . . is a separate legal question, subject to de novo review." *Garrity v. Md. State Bd. of Plumbing*, 221 Md. App. 678, 684 (2015) (emphasis removed).  On the flip side, we review a circuit court's denial of summary judgment for abuse of discretion.  *Dashiell*, 396 Md. at 165.

## COLLATERAL ESTOPPEL

Browne argues that the circuit court was incorrect in ruling that the OAH decision had any collateral estoppel effect on the circuit court action.  She first contends that the circuit court action was a direct appeal of the OAH decision, rather than an action collateral

to it.[5]  Because the legislature authorizes de novo review,[6] she maintains, the OAH decision

had no preclusive effect on the circuit court action.[7]

State Farm disagrees.  It maintains that the full evidentiary hearing conducted before

the OAH prohibits Browne from relitigating her claims against State Farm in circuit court.

It characterizes the circuit court action as an independent civil claim, rather than an appeal

of the administrative decision.

*The Nature of a CJP § 3-1701 Action*

Browne characterizes the circuit court action as a "direct appeal" of the OAH

decision that would be heard de novo while State Farm views it as an independent civil

---

[5] Browne also asserts that the proper doctrine for a direct appeal would be res judicata.  We think the related doctrine of collateral estoppel is a better fit because the circuit court determined that the OAH decision precluded both Browne's lack of good faith claim and her breach of contract claim.  While res judicata may have been the proper doctrine to be applied to the statutory lack of good faith claim, the application of preclusion to another cause of action implicates collateral estoppel.  *See Mackall v. Zayre Corp.*, 293 Md. 221, 228 (1982) (internal citations omitted) ("[I]f a proceeding between parties involves the same cause of action as a previous proceeding between the same parties, the principle of res judicata applies and all matters actually litigated or that could have been litigated are conclusive in the subsequent proceeding. If a proceeding between parties does not involve the same cause of action as a previous proceeding between the same parties, the principle of collateral estoppel applies, and only those facts or issues actually litigated in the previous action are conclusive in the subsequent proceeding.").  Regardless, our analysis of the preclusive effect of the administrative proceeding remains the same.

[6] IN § 27-001(g)(3) states that "[n]otwithstanding any other provision of law, an appeal to a circuit court under this section shall be heard de novo."

[7] Browne also argued that, as a matter of due process, she was entitled to rely upon the statement of review rights in the OAH decision which indicated she could either file the civil action under CJP § 3-1701 or a petition for judicial review with the circuit court. *See supra* note 4.  Since we determine that the circuit court was incorrect that the OAH decision collaterally estopped Browne's circuit court action, we need not address this argument.

-10-

claim. We agree with State Farm's characterization of the action. We have said that "the damage remedy/jury trial right authorized by CJP § 3-1701 is *independent from* a true de novo review of the MIA administrative determination[.]" *Thompson*, 196 Md. App. at 247 (emphasis added). We continued, "[A]n insured would not be appealing 'in accordance with' these statutes by praying a jury trial. If a plaintiff under CJP § 3-1701 seeks to present evidence before a jury, he or she is acting under that specific statute and not under [the general statutory provisions for judicial review]." *Id.* We believe this applies equally where, rather than seeking a jury trial, the insured elects to have the judge serve as the trier of fact. *See* CJP § 3-1701(j) (election of jury trial is permissive).

Browne chose to pursue a lack of good faith claim under CJP § 3-1701 by amending her breach of contract action to include the CJP § 3-1701 claim. She also petitioned for judicial review but dismissed this after she was allowed to amend her claim. In this appeal, we are dealing with the lack of good faith claim under CJP § 3-1701.[8] State Farm reads IN § 27-1001 as providing three avenues to an insured after an MIA decision. Administratively, the insured may (1) request a hearing before the OAH or (2) petition for judicial review of the MIA's decision. Civilly, the insured may file a lack of good faith claim under CJP § 3-1701. What the insured may not do, according to State Farm, is

---

[8] Because we are dealing with Browne's CJP § 3-1701 claim, we express no opinion on the permissibility of de novo judicial review of an administrative decision. *See* IN § 27-1001(g)(3). As in the *Thompson* case, "[w]hether de novo judicial review . . . is permitted under [*Department of Natural Resources v.*] *Linchester Sand and Gravel*[] [*Corp.*, 274 Md. 211 (1975)] is not presently before us." *Thompson v. State Farm Mut. Auto. Ins. Co.*, 196 Md. App. 235, 247 n.14 (2010).

request a hearing before the OAH and then, after receiving an adverse OAH decision, file the lack of good faith claim under CJP § 3-1701 in circuit court.

State Farm supposes that Browne was collaterally estopped from maintaining her circuit court action because the preceding OAH hearing was a quasi-judicial proceeding, the issues presented before the OAH were the same as those sought to be presented to the circuit court, and resolution of those issues was necessary for the OAH decision. We are not persuaded.

*Application of Collateral Estoppel Doctrine*

By the plain text of IN § 27-1001 and CJP § 3-1701, Browne was entitled to proceed with her circuit court action after receiving a final decision from the OAH. Before an insured may bring a CJP § 3-1701 action, she must first receive a final decision under IN § 27-1001:

> (c)(1) Except as provided in paragraph (2)[9] of this subsection, a party may not file an action under this subtitle before the date of a final decision under § 27-1001 of the Insurance Article.

CJP § 3-1701(c)(1). A final decision occurs either (1) when the party receiving an adverse MIA decision does not request an OAH hearing within 30 days or (2) after an OAH hearing that must result in a final decision. IN § 27-1001(f). CJP § 3-1701(c)(1) does not distinguish between a final decision by the MIA or by the OAH. Thus, the language of the statutes clearly allows the insured to pursue a CJP § 3-1701 action after either a final

---

[9] Paragraph (2) lists actions for which an insured is not required to comply with IN § 27-1001 before bringing a CJP § 3-1701 action—none of which are relevant here.

-12-

decision by the MIA or the OAH. This is supported by the intent of the legislature. As we said in *Thompson*, "[o]bviously, the 2007 legislation intended, to the extent constitutionally permitted, unfettered de novo review." 196 Md. App. at 246 n.13.

State Farm relies on IN § 27-1001(g) to say that Browne's only option after receiving the OAH decision was to petition for judicial review:

> (g)(1) If a party receives an adverse decision, the party may appeal a final decision by the Administration or an administrative law judge under this section to a circuit court in accordance with § 2-215 of this article and Title 10, Subtitle 2 of the State Government Article.

The remaining paragraphs under subsection (g) do not mention that an insured may bring a CJP § 3-1701 action after the OAH hearing. Because the statute explicitly states that judicial review is available after an OAH hearing but does not state the availability of a CJP § 3-1701 action, State Farm says, the insured's only option after the OAH hearing is the petition for judicial review.

State Farm's reading of the statute ignores the broader statutory scheme. Although there is no express mention of an insured's right to bring a CJP § 3-1701 action after an OAH hearing, a reading of the statutes in their entirety guides our decision. IN § 27-1001 and CJP § 3-1701 were enacted as part of the same session law and cross-reference each other. 2007 Laws of Md. ch. 150. Accordingly, although part of different articles, the statutory sections should be read together. IN § 27-1001 begins by stating that "[t]his section applies only to actions under § 3-1701 of the Courts Article." IN § 27-1001(b). As stated, CJP § 3-1701(c)(1) requires a final decision under IN § 27-1001—regardless of whether issued by the MIA or the OAH—before the independent civil action is available.

-13-

CJP § 3-1701(c)(1). Thus, although § 27-1001 does not explicitly mention the availability of a CJP § 3-1701 action following an OAH hearing, any contrary interpretation would ignore the clear statement in CJP § 3-1701 that it is available after a final decision.

As State Farm argues, the doctrines of collateral estoppel and res judicata ordinarily apply when there has been a contested case before an administrative agency. In *Batson v. Shiflett*, our Supreme Court[10] reiterated the test that was "first enunciated in *Exxon Corp. v. Fischer*, 807 F. 2d 842, 845–46 (9th Cir. 1987)":

> Whether an administrative agency's declaration should be given preclusive effect hinges on three factors: (1) whether the agency was acting in a judicial capacity; (2) whether the issue presented to the district court was actually litigated before the agency; and (3) whether its resolution was necessary to the agency's decision.

325 Md. 671, 701 (1992) (cleaned up). Yet, "[c]ollateral estoppel . . . began life and retains life as a common law doctrine." *Janes v. State*, 350 Md. 284, 295 (1998). As such, the General Assembly is free to alter it. *See id.* at 303–04.

In *Janes v. State*, our Supreme Court declined to apply collateral estoppel[11] against the government in a criminal prosecution for driving while intoxicated after the defendant

---

[10] At the November 8, 2022 general election, the voters of Maryland ratified a constitutional amendment changing the name of the Court of Appeals of Maryland to the Supreme Court of Maryland. The name change took effect on December 14, 2022.

[11] *Janes* also dealt with the double jeopardy aspect of collateral estoppel when applied to criminal proceedings. *Janes v. State*, 350 Md. 284, 298–303 (1998). That issue is not relevant in this case.

prevailed in an earlier administrative proceeding involving the suspension of his license on the same grounds. *Id.* at 286. The Court explained:

> We need not determine here whether common law collateral estoppel would operate to preclude a criminal prosecution under [Transportation Article ("TA")] § 21-902 based on an MVA finding in a [TA] § 16-205.1 proceeding, for the General Assembly has made clear through the enactment of [TA] § 16-205.1(*l*)(1) that criminal proceedings under § 21-902 and administrative proceedings under § 16-205.1 are independent of one another and that the findings made in one do not affect the other. That decision was deliberate and must be given effect, whatever the common law might otherwise be.

*Id.* at 303–04. The legislative history of those statutes revealed that the General Assembly had considered the issues of collateral estoppel and res judicata. *Id.* at 304–07. Accordingly, the legislature included an express provision dictating that facts determined in the administrative proceeding were independent of the facts to be adjudicated in the criminal proceeding. *Id.* at 306. Although the text and legislative history of those statutes was much clearer and more to-the-point than the statutes at hand, we nonetheless consider the reasoning of *Janes* applicable.

We have already explained that a circuit court action under CJP § 3-1701 is an independent action from a petition for judicial review of the administrative decision under IN § 27-1001. The legislature clearly was concerned that an insured's subsequent appearance in circuit court after the administrative proceeding might be barred. The legislative bill file for the legislation creating the relevant statutes indicates that the legislature contemplated whether a civil action would be permissible after the administrative proceeding. The Chairman of the House Judiciary Committee requested

-15-

advice from the Attorney General's Office on "whether [the provision authorizing a de novo appeal of an administrative decision] violates Separation of Powers by allowing the judiciary to usurp the functions of an agency of the Executive Branch." Letter from Robert A. Zarnoch, Assistant Attorney General, to the Honorable Joseph F. Vallario, Jr., Chairman of the House Judiciary Committee, at 1 (Mar. 23, 2007), *in* Bill Files to H.B. 425 & S.B. 389, 2007 Leg., 423d Sess. (Md. 2007) (emphasis removed). The Attorney General's Office responded that the legislation "enhance[d] an insured's independently-available civil action against an insure[r] but requires as a precondition to suit, that a complaint be filed with MIA, where it could be adjudicated via a contested case before the agency. . . . In my view, the measure . . . allows the parties . . . to pursue their civil action after meeting an administrative precondition." *Id.* at 2.

Other language in the statute points in the same direction. In describing the damages recoverable under a CJP § 3-1701 action, the final Chapter Law stated that an insured could recover "expenses and litigation costs incurred by the insured in an action *under this section* or *under § 27-1001 of the Insurance Article* or both[.]" 2007 Md. Laws ch. 150, CJP § 3-1701(e)(2) (emphasis added). The text also indicates that the legislature expected an administrative proceeding under IN § 27-1001 to be a prerequisite for a civil action under CJP § 3-1701. CJP § 3-1701 states that "a party may not file an action under this subtitle before the date of a final decision under § 27-1001 of the Insurance Article." CJP § 3-1701(c)(1). IN § 27-1001 says that "a person may not bring or pursue an action under § 3-1701 of the Courts Article in a court unless the person complies with this section." IN § 27-1001(c)(1). It would be antithetical for the legislature to provide that an

-16-

insured could not bring a civil action under CJP § 3-1701 until after a final decision from either the MIA or the OAH under IN § 27-1001 if they also intended a final decision by the OAH to have preclusive effect.

State Farm tries to use legislative documents to argue that a civil action under CJP § 3-1701 is not available after an OAH hearing. It points to the Revised Fiscal Note for the legislation which states that the bill "allows any party within 30 days after an adverse *decision from MIA* to request a hearing conducted by the [OAH] or to appeal to a circuit court. A party who receives an adverse decision at an administrative hearing may appeal to a circuit court." Dep't Legis. Servs., Fiscal and Policy Note, S.B. 389, 423d Sess., at 2 (Md. 2007) (revised Apr. 30, 2007) (emphasis added). State Farm points out that the Fiscal Note does not mention the availability of a civil action under CJP § 3-1701 after the OAH hearing. To State Farm, the Fiscal Note supports its position that the CJP § 3-1701 action is only available after the initial MIA decision and not after a hearing before the OAH.

We do not find State Farm's argument persuasive. The statutory text itself is not limited by the language used in the Fiscal Note. The statement in the Fiscal Note on which State Farm relies in arguing that the CJP § 3-1701 action is only available after the initial MIA decision—that "[a] party may not file an action under the bill until the date of a final *decision by MIA* on the party's claim"—is based on CJP § 3-1701(c)(1). *Id.* (emphasis added). This statutory provision states that "a party may not file an action under this section before the date of a final decision under [IN § 27-1001]." CJP § 3-1701(c)(1). Thus, the use of "a final decision by MIA" in the Fiscal Note does not even purport to override the

-17-

language in the statute itself that allows the action to proceed after "a final decision under [IN § 27-1001]." As we have already explained, that final decision can come from either the MIA or the OAH.[12]

In sum, we determine that the legislature did not intend for collateral estoppel to apply in a CJP § 3-1701 action that follows an OAH hearing. The plain language of the statutes allows an insured to proceed with the civil action after a final decision without distinguishing between a final decision made initially by the MIA and one that results from an OAH hearing. We think the legislature intended to require an insured to exhaust their administrative remedies before resorting to the civil action in circuit court and that part of those administrative remedies is the hearing before the OAH that results in a final decision. Accordingly, a final decision issued after an OAH hearing does not collaterally estop an insured from proceeding with a CJP § 3-1701 civil action in circuit court.

Nor does it have any collateral estoppel effect on a breach of contract or other civil action against an insurer. The statute is even clearer on this point. CJP § 3-1701 provides that it "does not limit the right of any person to maintain a civil action for damages or other remedies otherwise available under any other provision of law." CJP § 3-1701(i). Although

---

[12] Likewise, a final decision issued by the OAH is a final decision of the agency itself. IN § 27-1001(f)(2)(i) dictates that an administrative hearing on a lack of good faith claim is governed by the Administrative Procedure Act ("APA") and must result in a final decision. Under the APA, the OAH has delegated authority to issue "the final administrative decision *of an agency*[.]" Md. Code (1984, 2021 Repl. Vol.), State Gov't § 10-205(b)(5) (emphasis added). Thus, the final decision issued by the OAH in lack of good faith claims under IN § 27-1001 is in fact still a final decision of the agency itself—the MIA.

IN § 27-1001 does not contain an identical provision, CJP § 3-1701 first requires compliance with IN § 27-1001. Undoubtedly, the General Assembly determined that compliance with CJP § 3-1701, including completion of administrative proceedings under IN § 27-1001, should not foreclose an insured's other civil actions against the insurer, such as a breach of contract claim. This intent is likewise revealed in the Fiscal Note to the original legislation which reiterated that "[t]he bill does not limit the right of any person to maintain a civil action otherwise available under any other provision of law." Dep't Legis. Servs., *supra*, at 2.

We hold that Browne's choice to proceed to an OAH hearing after receiving the initial MIA decision did not collaterally estop her from pursuing either her original breach of contract claim or her civil action under CJP § 3-1701. Accordingly, we reverse the judgment of the circuit court and remand the case for proceedings consistent with this opinion.

## SUBSEQUENT NEGLIGENT MEDICAL TREATMENT

Browne contends that the circuit court abused its discretion in denying her motion for summary judgment. She argues that State Farm raised no genuine dispute that the automobile collision was a but-for cause of her injuries, including the surgery, because the surgery was an attempt to treat her original injuries. She also asserts that, given the undisputed facts, the collision was a legal, proximate cause of her surgery and post-surgery injuries.

Browne further avers that State Farm presented no evidence or argument to rebut these contentions. First, she claims State Farm presented insufficient evidence that Dr.

-19-

Rosenbaum's surgery was negligent, thus precluding any defense involving superseding causation. Even if the surgery was negligent, she says, State Farm would continue to be liable for any subsequent, negligent medical treatment of a tortious injury.

State Farm maintains that the circuit court correctly ruled that Browne was not entitled to summary judgment. It advances that Dr. Rosenbaum's surgery was negligent and thus a superseding cause. State Farm further maintains that Browne's argument is based on a misunderstanding of the subsequent negligence doctrine. It asserts that a tortfeasor is only liable for subsequent injury caused by normal efforts that are reasonably required to render aid. Relying on *Desua v. Yokim*, 137 Md. App. 138 (2001), State Farm insists that the injured person is not entitled to recover for medical treatments that are not fair, reasonable, and necessary. Thus, it concludes that Browne is not entitled to recover for her surgical and post-surgical expenses because they were neither medically necessary nor related to the injuries she sustained in the accident.

*Denial of Browne's Motion for Summary Judgment*

After granting State Farm's motion for summary judgment at the motions hearing, the court stated, "I'm going to deny the plaintiff's motion for summary judgment because I'm not convinced that the plaintiff is entitled to a judgment as a matter of law. I think granting the defendant's motion for summary judgment effectively disposes of the case and doesn't leave anything else to be tried." We shall vacate the circuit court's denial of Browne's motion because it relied on its erroneous grant of State Farm's motion on collateral estoppel grounds in so ruling. Thus, we shall remand for reconsideration of Browne's motion.

The court "exercise[s] discretion when affirmatively denying a motion for summary judgment or denying summary judgment in favor of a full hearing on the merits." *Dashiell*, 396 Md. at 164. However, the "court must exercise its discretion in accordance with correct legal standards." *Ehrlich v. Perez*, 394 Md. 691, 708 (2006) (quoting *LeJeune v. Coin Acceptors, Inc.*, 381 Md. 288, 301 (2004)).

"[The] denial of summary judgment . . . . may present any one of three possibilities[.]" *Com. Union Ins. Co. v. Porter Hayden Co.*, 116 Md. App. 605, 628 (1997). The first is when there is "a genuine factual dispute that calls for a trial and for fact finding by judge or jury." *Id.* The second is a discretionary option by the judge to allow further fact finding even when there is no genuine dispute of fact. *Id.* at 629–30. The third is where judgment in favor of the other party is justified. *Id.* at 633–34.

The circuit court apparently relied on the third basis—that judgment was warranted in State Farm's favor—in denying Browne's motion. As discussed above, the court's grant of summary judgment in State Farm's favor was error. Accordingly, we vacate the circuit court's denial of Browne's motion for summary judgment because it relied on its erroneous grant of summary judgment to State Farm in so ruling and remand the case to the circuit court to reconsider the motion under correct legal standards.

We offer the following discussion for the circuit court in its reconsideration on remand. As the uninsured motorist coverage provider, State Farm is liable, up to its policy limit, for damages for which the uninsured motorist would have been liable. *See West Am. Ins. Co. v. Popa*, 108 Md. App. 73, 79 (1996) ("Uninsured motorist coverage is unique because it predicates indemnification of the insured on a showing of fault by a third-party

uninsured tortfeasor. The insurer does not pay benefits to the insured unless the uninsured tortfeasor's liability has been established.").

Two doctrines are relevant in determining State Farm's liability: the subsequent negligence doctrine, as embodied by § 457 of the Restatement (Second) of Torts, and Maryland case law requiring that, to be recoverable, medical bills must be fair, reasonable, and necessary. *See Desua v. Yokim*, 137 Md. App. 138, 143–45 (2001). This is the first occasion that a Maryland appellate court has considered the interplay between the two.

*Subsequent Negligence Doctrine*

The subsequent negligence doctrine extends a tortfeasor's liability for certain negligence that occurs after the primary tort. Section 457 of the Restatement (Second) of Torts (1965) explains the doctrine:

> If the negligent actor is liable for another's bodily injury, he is also subject to liability for any additional bodily harm resulting from normal efforts of third persons in rendering aid which the other's injury reasonably requires, irrespective of whether such acts are done in a proper or a negligent manner.

Our Supreme Court has adopted this doctrine and cited § 457 favorably. *See Morgan v. Cohen*, 309 Md. 304, 310 (1987) ("It is a general rule that a negligent actor is liable not only for harm that he directly causes but also for any additional harm resulting from normal efforts of third persons in rendering aid, irrespective of whether such acts are done in a proper or a negligent manner."); *Trieschman v. Eaton*, 224 Md. 111, 114 (1961) ("[T]he first tortfeasor is liable for the additional damage added to the original harm by the acts of a negligent doctor (who, of course, is also liable for the additional damage)."); *Underwood-Gary v. Mathews*, 366 Md. 660, 668 (2001).

Comment a to § 457 explains further that, when a person's negligent act is the proximate cause of bodily harm which requires medical intervention, the negligent actor remains liable for "harm resulting from the manner in which the medical . . . services are rendered, irrespective of whether they are rendered in a mistaken or negligent manner[.]" As our Supreme Court explained, "[t]he reasoning behind this rule is that the original tortfeasor by his actions places the plaintiff in a position of danger and should be held accountable for the risks inherent in treatment and rendering aid." *Morgan*, 309 Md. at 310; *accord Underwood-Gary*, 366 Md. at 668. "Courts in general have correctly characterized the negligent treatment as a subsequent tort for which the original tortfeasor is jointly liable." *Morgan*, 309 Md. at 310.

The liability of the original tortfeasor is not unlimited, however. The extent of liability is constrained by principles of proximate causation. *See Stone v. Chi. Title Ins. Co. of Md.*, 330 Md. 329, 337 (1993) ("Negligence is not actionable unless it is a proximate cause of the harm alleged."); V. Woerner, Annotation, *Civil Liability Of One Causing Personal Injury For Consequences of Negligence, Mistake, or Lack of Skill of Physician or Surgeon*, 100 A.L.R.2d 808 § 2 (originally published in 1965) ("The question whether a tortfeasor who causes personal injury is civilly liable to the person injured for the consequences of negligence, mistake, or lack of skill on the part of the physician or surgeon who treats the original injury is basically a question of proximate cause.").

Under the Restatement and Maryland law, an "actor's negligent conduct is a legal cause of harm to another if (a) his conduct is a substantial factor in bringing about the harm, and (2) there is no rule of law relieving the actor from liability because of the manner in

-23-

which his negligence has resulted in the harm." *Copsey v. Park*, 453 Md. 141, 164–65 (2017) (quoting the Restatement (Second) of Torts § 431). The question in the context of subsequent negligent medical treatment cases "is whether [the original tortfeasor] should have foreseen the general harm . . . and not the specific manifestation of that harm[.]" *Yonce v. SmithKline Beecham Clinical Lab'ys, Inc.*, 111 Md. App. 124, 144 (1996).

When a third party's negligence is also a substantial factor in bringing about the injury, the issue of superseding causation arises to determine whether the original tortfeasor remains liable for all of the harm. *Copsey*, 453 Md. at 165. "When multiple negligent acts or omissions are deemed a cause-in-fact of a plaintiff's injuries, the foreseeability analysis must involve an inquiry into whether a negligent defendant is relieved from liability by intervening negligent acts or omissions." *Pittway Corp. v. Collins*, 409 Md. 218, 247 (2009). The original tortfeasor remains liable "where the intervening causes . . . were set in motion by his earlier negligence[] or naturally induced by such wrongful act" or where the intervening causes could reasonably have been anticipated. *Id.* at 248 (quoting *Penn. Steel Co. v. Wilkinson*, 107 Md. 574, 581 (1908)).

The original tortfeasor is released from liability for all harm "only if the intervening negligent act or omission at issue is considered a superseding cause of the harm to the plaintiffs." *Id.* The following factors are relevant:

> (a) the fact that its intervention brings about harm different in kind from that which would otherwise have resulted from the actor's negligence;
>
> (b) the fact that its operation or the consequence thereof appear after the event to be extraordinary rather than normal in view of the circumstances existing at the time of its operation;

(c) the fact that the intervening force is operating independently of any situation created by the actor's negligence, or, on the other hand, is or is not a normal result of such a situation;

(d) the fact that the operation of the intervening force is due to a third person's act or to his failure to act;

(e) the fact that the intervening force is due to an act of a third person which is wrongful toward the other and as such subjects the third person to liability to him;

(f) the degree of culpability of a wrongful act of a third person which sets the intervening force in motion.

*Id.* at 248 (quoting Restatement (Second) of Torts § 442). An intervening act is generally considered a superseding cause when it is an "unusual" or "extraordinary" act "that could not have been anticipated by the original tortfeasors." *Copsey*, 453 Md. at 165 (quoting *Pittway*, 409 Md. at 249). Said another way, "[a]n intervening force is a superseding cause if the intervening force was not foreseeable at the time of the primary negligence." *Yonce*, 111 Md. App. at 140.

"Even if the intervening force is the negligence of a third party, it does not necessarily become a superseding cause." *Id.* at 148. The subsequent negligence is not a superseding cause if (1) the original tortfeasor should have realized the third party would act in such way, (2) "a reasonable man . . . would not regard [the third party's act] as highly extraordinary[,]" or (3) "the intervening act is a normal consequence of a situation created by the [original tortfeasor's] conduct and the manner in which it is done is not extraordinarily negligent." *Id.* (quoting Restatement (Second) of Torts § 447).

-25-

Section 457 of the Restatement (Second) of Torts provides comments which embody the principles of proximate and superseding causation. The tortfeasor is liable if the medical provider's "mistake or negligence is of the sort which is recognized as one of the risks which is inherent in the human fallibility of those who render such services." Restatement (Second) Torts § 457 cmt. a. Similarly, the tortfeasor is responsible for "injuries which result from the risk normally recognized as inherent in the necessity of submitting to . . . treatment." Cmt. d. Thus, she is not liable for "misconduct which is extraordinary[.]" *Id.* Comment e specifies that the negligent actor is not liable if those providing treatment "inflict injury upon [the victim] which is not intended to aid him" or if the victim suffers harm while "tak[ing] advantage of his being in the hospital to secure treatment for" a disease or injury not caused by the actor's negligence.

The Restatement provides illustrations for clarity. Illustration 1 explains, "A's negligence causes B serious harm. B is taken to a hospital. The surgeon improperly diagnoses his case and performs an unnecessary operation, or, after proper diagnosis, performs a necessary operation carelessly. A's negligence is a legal cause of the additional harm which B sustains." Illustrations 2 and 3 show that A's negligence remains a legal cause of the additional harm even if that harm is caused by other medical professionals or staff and if the negligence or mistake is not a direct treatment of the original injuries. Illus. 2 (nurse causes burns by placing faulty hot water bottle in B's bed); illus. 3 (clerical staff accidentally swaps medical charts resulting in unnecessary surgery of B).

The illustrations also demonstrate examples when the original tortfeasor would not be responsible for negligent treatment. For example, the tortfeasor would not be

responsible if a nurse administers a lethal dose of morphine because she cannot tolerate watching the victim suffer (illustration 4) or intentionally attacks the victim (illustration 5). Finally, illustration 6 explains that the original tortfeasor (A) would not be liable if, while in the hospital for a broken leg caused by A's negligence, the victim (B) learns he is suffering from an unrelated hernia and "decides to take advantage of his being in the hospital to have a hernia operation performed," and the operation causes additional injury.

Our appellate courts have had only a handful of occasions[13] to consider the issue of subsequent medical negligence. In 1915, our Supreme Court acknowledged that the victim's own negligence could play a role in the original tortfeasor's continued liability for additional harm. In *Taxicab Co. of Baltimore City v. Emanuel*, it approved a jury instruction in a case involving an automobile accident resulting in plaintiff's broken leg. 125 Md. 246, 262 (1915). The trial court had "instructed the jury that if they found that the plaintiff had suffered additional damage by the breaking of his leg in the hospital after the collision, and that he might have avoided the second breaking by the use of ordinary

---

[13] Our courts have primarily applied the rule in cases involving the one satisfaction rule. *See Trieschman v. Eaton*, 224 Md. 111, 114–20 (1961); *Kyte v. McMillion*, 256 Md. 85, 99 (1969); *Morgan v. Cohen*, 309 Md. 304, 320–21 (1987); *Underwood-Gary v. Mathews*, 366 Md. 660, 667 (2001); *Gallagher v. Mercy Med. Ctr.*, 463 Md. 615, 625–26 (2019). The one satisfaction rule mandates that "there can be but one satisfaction for the same injury[.]" *Trieschman*, 224 Md. at 115. "[T]he satisfaction of the injured person by the first negligent actor does away with all right of action against the second." *Id.*

care and diligence, then he is not entitled to compensation for such additional damage."

*Id.*[14]

Somewhat peripherally, our Supreme Court considered the issue in the context of the one satisfaction rule in *Kyte v. McMillion*, 256 Md. 85 (1969). In that case, after an automobile accident caused the plaintiff to be hospitalized for months, the hospital administered the plaintiff the wrong blood protein. *Id.* at 87–88. Even though the plaintiff released the hospital for its negligent treatment, the Court allowed her to seek damages from the original tortfeasor. *Id.* at 108. In reaching this conclusion, the Court relied, in part, on a Massachusetts decision which reasoned that, for the original tortfeasor to remain liable, the subsequent negligence or mistake of treatment providers must "flow legitimately as a natural and probable consequence of the original injury[.]" *Id.* at 103 (quoting *Purchase v. Seelye*, 121 N.E. 413, 414 (Mass. 1918)).

---

[14] In affirming the validity of that instruction, our Supreme Court relied on the Supreme Court of Indiana's decision in *City of Goshen v. England*, which approved a jury instruction our Supreme Court characterized as follows:

> [T]hat the plaintiff was not entitled to recover for any pain, anguish, or deformity produced by her negligence in the treatment of the limb. That if she by her negligence in the treatment of the limb had increased the pain, suffering and deformity, she could not recover for such increased pain, suffering and deformity produced by her own negligence.

*Taxicab Co. of Balt. City v. Emanuel*, 125 Md. 246, 262–63 (1915) (citing *City of Goshen v. England*, 21 N.E. 977 (Ind. 1889)).

In *Copsey v. Park*, our Supreme Court considered a case involving multiple negligent medical providers.[15] 453 Md. 141 (2017). In that case, it allowed a radiologist to introduce evidence of subsequent treating doctors' negligence. *Id.* at 153–56. In holding the evidence admissible, the Court explained that the issue of causation was for the jury and that the admitted evidence "tended to show that [the radiologist] was not negligent and that if he were negligent, the negligent omissions of the other three subsequent treating physicians were intervening and superseding causes of the harm to [the deceased]." *Id.* at 156–57.

The Court explained that the evidence of subsequent negligent treatment "was relevant to the determination of whether [the radiologist] was negligent, whether he was the proximate cause of [the deceased's] death, and whether or not the other doctors were intervening and superseding causes of [the deceased's] death." *Id.* at 167 n.7. Ultimately, "the jury was entitled to determine whether it was foreseeable that other doctors would have negligently treated the patient[.]" *Id.* at 167. In reaching this conclusion, the Court said, "Negligence by a subsequent actor breaks the chain of causation when the action by

---

[15] We recognize that *Copsey* specifically involved negligence in the medical malpractice context. Our Supreme Court recently stated that "the holdings in *Martinez* [*ex rel. Fielding v. John Hopkins Hospital*, 212 Md. App. 634 (2013)] and *Copsey* establish the following: A defendant *in a medical malpractice case* generally may introduce evidence of a non-party's medical negligence to prove that he or she was not negligent, or that his or her negligence did not cause the plaintiff's injuries. . . . [or] to prove that the non-party's acts or omissions were a superseding cause that cleaved the chain of causation running from the defendant's negligence." *Am. Radiology Servs., LLC v. Reiss*, 470 Md. 555, 578 (2020) (emphasis added). We see no need to circumscribe the reasoning of *Copsey* to medical malpractice cases and consider it equally applicable here, where the original tort is motor vehicle negligence.

the subsequent actor is extraordinary and not reasonably foreseeable." *Id.* at 168. "Liability continues if a defendant 'could have anticipated the intervening act of negligence might, in a natural and ordinary sequence, follow the original act of negligence[.]'" *Id.* (citation omitted).

From our Supreme Court's decisions, we gather that Maryland recognizes both the general rule that a tortfeasor remains liable for subsequent negligent medical treatment and the rule's limitations. The mere possibility of subsequent negligent treatment is not sufficient. The subsequent negligence must be foreseeable, *Copsey*, 453 Md. at 167–68, or in other words, be "a natural and probable consequence of the original injury[.]" *Kyte*, 256 Md. at 103 (quoting *Purchase*, 121 N.E. at 414). This is consistent with § 457 of the Restatement, which requires that the subsequent treatment causing injury be one that the injured person "reasonably requires[.]" In addition, the comments explain that "the mistake or negligence [of the subsequent treatment must be] of the sort which is recognized as one of the risks which is inherent in the human fallibility of those who render such services[,]" § 457 cmt. a., and that the original tortfeasor "is responsible only for such additional harm, or such aggravation of the original injury as may be due to the efforts which third persons reasonably make for the purpose of curing" the injured. § 457 cmt. e. Thus, an original tortfeasor will remain liable unless it is unforeseeable that medical professionals would perform this type of negligent medical treatment or the type of medical mistake is outside the realm of ordinary human fallibility.

Comparable to our Supreme Court in *Taxicab Co.*, other courts have recognized that a victim's ability to recover from the original tortfeasor may depend on whether they were

negligent in seeking treatment for their injuries. The "'general rule' that, if there was no negligence in selecting the doctor, the original tortfeasor is responsible for the negligence of an attending physician in treating the injured party" is well recognized. *Lee v. Small*, 829 F. Supp. 2d 728, 749 (N.D. Iowa 2011); *see also Kan. City S. Ry. Co. v. Justis*, 232 F.2d 267, 272 (5th Cir. 1956) ("There was no suggestion that the plaintiff did not exercise due diligence in the selecting of a doctor, and that is all that is required of an injured person."); *Tex. & P.R. Co. v. Hill*, 237 U.S. 208, 214–15 (1915) (approving instruction excluding any liability on part of defendant for injury caused by malpractice in treatment of injuries "if the plaintiff had failed to exercise reasonable care in the selection of a competent surgeon . . . [or] had in any respect fallen below the standard which reasonable prudence would have exacted . . . in following his advice"); *Anderson & McPadden, Inc. v. Tunucci*, 356 A.2d 873, 879 (Conn. 1975) ("[A]n injured party can recover from the original tort-feasor for damages caused by the negligence of a doctor in treating the injury which the tort-feasor caused, provided the injured party used reasonable care in selecting the doctor."); *Wallace v. Pa. R. Co.*, 71 A. 1086, 1090 (Pa. 1909) ("[T]hough injury was caused by unskillful treatment, yet, if the plaintiff exercised ordinary care in the selection of the surgeon, the defendant, if liable legally for the original injury, would be liable for the increased injury as well.").

For example, the U.S. Court of Appeals for the Tenth Circuit reviewed a jury instruction on the issue of subsequent medical treatment in *Jess Edwards, Inc. v. Goergen*:

> A person causing an actionable injury is liable for the aggravation thereof by the negligence, if any, of a physician, surgeon or other medical specialist, if the person who is

injured, uses reasonable care in the selection of such physician, surgeon or other medical specialist.

You are further instructed that if an injured person exercises reasonable care to minimize the danger by selecting a physician, surgeon or other medical specialist, that person may recover damages to the full extent of the injury sustained, even though the physician, surgeon or medical specialist omits to use the most approved remedy or the best means of cure, or fails to exercise as high a degree of care or skill as any other physician, surgeon or other medical specialist might have exercised.

Any act of negligence on the part of the medical specialist, physician or surgeon employed by the injured person, must be of the sort which is recognized as one of the risks which is inherent in the human fallibility of those who render such services.

256 F.2d 542, 543 (10th Cir. 1958). The defendant claimed that the district court erred in failing to rule out its liability for improper medical treatment as unforeseeable. *Id.* at 543–44. The Tenth Circuit rejected this argument and found no error in the jury instruction, adding that

[T]he tort-feasor should have anticipated that his negligence would result in injuries requiring medical treatment. The tort-feasor must recognize the 'risk involved in the human fallibility of physicians, surgeons, nurses and hospital staffs which is inherent in the necessity of seeking their services.'

*Id.* at 544 (quoting the Restatement (First) of Torts § 457 cmt. b (1934)).

It is this concept of foreseeability that justifies the original tortfeasor's continued liability. As the United States District Court for the District of Delaware explained, "[p]usuant to the Restatement, a negligent intervening act of a third party is not a super[s]eding cause if the intervening act is reasonably foreseeable or a normal response to the situation created by the actor." *Drummond v. Del. Transit Corp.*, 365 F. Supp. 2d

581, 589 (D. Del. 2005) (citing Restatement (First) of Torts § 447 (1934)). Thus, medical care administered to treat injuries caused by an accident, "whether or not properly administered," is ordinarily "reasonably foreseeable." *Id.* at 589–90.

In sum, a negligent actor generally continues to be liable for negligent medical treatment of the injuries the actor caused. The scope of this liability, however, is constrained by principles of proximate and superseding causation. As the Supreme Court of New Hampshire aptly explained,

> As a general rule if a second injury or an aggravation of a prior one is considered to be a direct consequence or a natural result of the original injury, the original wrongdoer is held liable for the entire damage. Thus the original tortfeasor has been held liable for an aggravation of the original injury caused by the medical, surgical or hospital services rendered to the plaintiff on account of that injury. . . .
>
> On the contrary if a second injury or an aggravation of a previous injury is attributable to a distinct intervening cause without which it would not have happened, the wrongdoer is held to be liable for the original injury only. In other words if the aggravation of a previous injury is caused by a new and independent force which breaks the chain of causal connection with the original wrong and the first tort-feasor is not responsible for the aggravation.

*Armstrong v. Bergeron*, 178 A.2d 293, 294 (N.H. 1962) (internal citations omitted).

Little has been written about the requirement that an injured person use reasonable care in selecting a doctor and carrying out her treatment. Our research has disclosed no Maryland cases where a defendant sought to relieve itself from liability on the basis that the plaintiff was negligent in the selection of her doctor or in the carrying out of her

treatment.  Researching out of state cases produces sparse results.  *See* 100 A.L.R.2d 808 § 3[d] (noting meager cases).

In 1878, the Supreme Court of New Hampshire described "[t]he degree of care and prudence required to be exercised by the plaintiff in the selection of a physician and surgeon, and the means used for his recovery and cure from his injuries" as "such care and prudence as mankind in general exercise[s]." *Boynton v. Somersworth*, 58 N.H. 321, 322 (1878).  The New York Court of Appeals has described the requirement as "ordinary care[,]" adding that the injured person "is not obliged to employ the most skillful surgeon that can be found, or resort to the greatest expense to ward off the consequence of an injury which another has inflicted upon him." *Lyons v. Erie Ry. Co.*, 57 N.Y. 489, 491 (1874). Instead, "[h]e is bound to act in good faith and to resort to such means and adopt such methods reasonably within his reach as will make his damage as small as he can." *Id.*  And the Supreme Court of Errors of Connecticut similarly said that "it [is] the duty of the plaintiff to use ordinary care to cure and restore herself, and reckless or negligent conduct on her part, if thereby her injuries were enhanced, cannot be charged to the defendant." *Flint v. Conn. Hassam Paving Co.*, 103 A. 840, 840 (Conn. 1918); *accord City of Crete v. Childs*, 9 N.W. 55, 56 (Neb. 1881) ("[I]t was unquestionably [plaintiff's] duty to exercise reasonable care and diligence in the employment of medical aid[.]"); *Smith v. Mo., K. & T. Ry. Co.*, 185 P. 70, 73–74 (Ok. 1918), *on reh'g* (Nov. 18, 1919) (plaintiff not responsible for substandard medical treatment where doctors were regularly licensed, well-known and reputable, and plaintiff acted with good faith and due care in seeking their treatment).

The Supreme Court of California considered a defendant's argument on appeal that it should have been allowed to present evidence that the plaintiff received improper medical care. *Boa v. S.F.-Oakland Terminal Rys.*, 187 P. 2, 6 (Cal. 1920). The court said this evidence would be admissible "only in [the] event there was evidence in the case from which the jury might reasonably have found that the plaintiff was negligent in her choice of a physician." *Id.* The plaintiff in the case was in an unfamiliar location and asked her one acquaintance if she knew anything about her treating physician. *Id.* The acquaintance indicated that she thought the doctor was "all right." *Id.*

The court affirmed the exclusion of the evidence. *Id.* at 6–7. It concluded that "the defendant failed to lay a sufficient foundation for the reception of evidence of improper treatment" because there was "no evidence tending to show that any information of this physician's lack of skill was brought to the knowledge of plaintiff prior to the employment or that she continued with him after being informed of any lack of skill or failure to give proper treatment." *Id.*

Based on the Restatement provisions and case law described above, examples of injuries beyond the scope of liability include (1) extraordinary misconduct by medical professionals, (2) intentional torts committed by medical professionals against the victim, (3) a victim's elected treatment of an ailment known to be unrelated to the injuries caused by the negligent actor, (4) treatment by a medical professional the victim was negligent in selecting, and (5) aggravation of the injury due to the victim's negligence in carrying out the treatment of her injuries.

"[W]hen the facts are undisputed, and are susceptible of but one inference," the issue of proximate cause "is one of law for the court[.]" *Lashley v. Dawson*, 162 Md. 549, 563 (1932). Otherwise, the question is for the jury. *Id.* at 562–63. The same is true for determining whether an act is a superseding cause. *Copsey*, 453 Md. at 166. On remand, the circuit court will again have an opportunity to rule on Browne's motion for summary judgment. Guided by the foregoing discussion, the court should consider if the facts are appropriate to rule as a matter of law or if the issue must be sent to the trier of fact.

### *Requirement that Medical Bills be Fair, Reasonable, and Necessary*

Although State Farm recognizes that Maryland has adopted § 457 of the Restatement (Second) of Torts, it relies on *Desua v. Yokim*, 137 Md. App. 138 (2001) for the proposition that "[u]nder Maryland law, an injured party is only entitled to recover for medical treatment that is fair, reasonable, and necessary." We explain below why its interpretation of *Desua* infringes on the legitimate scope of the subsequent negligence doctrine.

State Farm correctly notes that Maryland courts have not discussed the interplay of § 457 of the Restatement just discussed and the rule requiring that medical bills be fair, reasonable, and necessary. Nor have our courts elaborated on the specifics of the fair, reasonable, and necessary requirement generally.

In *Desua v. Yokim*, this Court reiterated the principle that "[i]n order for the amount paid or incurred for medical care to be admissible as evidence of special damages, there ordinarily must be evidence that the amounts are *fair and reasonable*." 137 Md. App. at 143 (quoting *Shpigel v. White*, 357 Md. 117, 128 (1999)) (emphasis added). We then added

that a plaintiff is "also required to prove that her medical treatments were 'necessary.'" *Id.* at 144 (quoting *Metro. Auto Sales v. Koneski*, 252 Md. 145, 154 (1969)). In sum, *Desua* synthesized the rule that there must be evidence that medical bills are fair, reasonable, and necessary, for the bills to be admissible as evidence of damages.[16]

*Desua* involved an automobile accident. *Id.* at 139. The plaintiff sought damages for soft tissue injury of the neck but did not intend to call an expert witness at trial. *Id.* at 139–40. Instead, she planned to introduce her medical bills through billing managers of her providers. *Id.* at 142. The trial court entered summary judgment in favor of the defendant, concluding that the plaintiff "needed an expert witness to introduce her medical bills into evidence[.]" *Id.* at 143.

We affirmed. *Id.* at 141. We explained that, although billing managers can testify about the reasonableness of medical bills, they are not competent to establish the necessity of medical bills because the billing manager cannot properly "explain why the patient's physician chose a particular type of treatment." *Id.* at 144. "Thus, where the issue of *necessity* is raised, the plaintiff cannot introduce medical bills through a billing manager." *Id.* (footnote omitted). We did not explain, however, what exactly the term "necessary" entailed.

*Desua* relied on three cases in synthesizing the rule that medical bills be fair, reasonable, and necessary: *Shpigel v. White*, 357 Md. 117 (1999), *Kujawa v. Baltimore*

---

[16] Because *Desua* synthesized the rule that medical bills be fair, reasonable, and necessary, we will sometimes refer to this requirement in our discussion as the *Desua* rule.

*Transit Co.*, 224 Md. 195 (1961), and *Metropolitan Auto Sales Corp. v. Koneski*, 252 Md. 145 (1969). *Shpigel* focused on the reasonableness requirement of the rule. That case involved a motor vehicle tort in which plaintiffs had attempted "to prove causation and damages through medical records and bills without live witness sponsorship or amplification." *Shpigel*, 357 Md. at 120. The records and bills were accompanied by affidavits from custodians for the medical providers that the "bills were fair and reasonable and that the services were incurred as a direct result of the automobile accident[.]" *Id.* at 124. The Court deemed the affidavits insufficient to satisfy the reasonableness requirement, stating that "the fact to be proved is the reasonableness of the bill, but the witness to that fact is not present and subject to cross-examination." *Id.* at 129. Thus, exclusion of the bills was proper because plaintiff did not put on testimony from a qualified witness that the charges were reasonable. *Id.*

*Kujawa* likewise involved the amount of medical bills. 224 Md. at 208. Plaintiffs in that case claimed damages for personal injuries, including hospital and medical expenses, arising from a motor vehicle collision. *Id.* at 200. One of the plaintiffs testified about receiving medical treatments from multiple doctors, after which "the doctors' unauthenticated bills were proffered as evidence." *Id.* at 208. Two of the doctors were present at the trial, but the remaining "were not present to verify the reasonableness of their charges[.]" *Id.* The Court determined that it was proper to exclude the medical bills from doctors who were not present because the plaintiffs did not put on evidence that the charges were reasonable. *Id.* The medical bills alone, and the fact they were paid, did "not establish

the reasonable value of the services for which the bills were rendered or justify recovery therefor." *Id.*

*Desua* cited *Metropolitan Auto Sales* for the proposition that the plaintiff was "required to prove that her medical treatments were 'necessary.'" *Desua*, 137 Md. App. at 144 (quoting *Metro. Auto Sales Corp.*, 252 Md. at 154). *Metropolitan Auto Sales* involved, in part, damages arising from an automobile collision. 252 Md. at 154. Regarding a plaintiff's medical bill, the Court explained:

> The bill for [plaintiff's] 12 day sojourn in the Montgomery General Hospital totaled $336.35. There was no showing that her hospitalization was *necessary* or that the charge was reasonable, other than later testimony that a charge of $337.21 for 6 days (in 1967) in Holy Cross Hospital was fair and reasonable. No details of this stay are in the record.
>
> \*     \*     \*
>
> While the admission of the bill was clearly improper we do not think the error justifies reversal. However, we shall require the judgment in favor of [plaintiff] to be reduced by $336.35.

*Id.* (emphasis added). The Court did not cite precedent when stating that there was no showing plaintiff's hospitalization was necessary nor did it explain what it meant by the term "necessary."

This *Desua* rule is best understood as a threshold evidentiary inquiry. 137 Md. App. at 145 (describing the issue of necessity as an "essential foundational requirement"). Where damages arising from medical treatment are at issue, it is appropriate to prove them by introducing medical bills. A plaintiff, however, must properly lay the foundation for their introduction. "Expert testimony is part of the necessary foundation for the

introduction of medical bills." Joseph F. Murphy, Jr. & Erin C. Murphy, Maryland Evidence Handbook (5th ed.) § 1401, at 689. Thus, the *Desua* rule that medical bills be fair, reasonable, and necessary is the threshold requirement before a plaintiff may present evidence of such bills to the trier of fact.

The question before us in this case is different. It does not involve the mere absence of an evidentiary foundational witness. Rather, we address the more substantive issue of what the "necessary" requirement means in allocating liability to an original tortfeasor when subsequent medical treatment is provided negligently. Because the Maryland appellate courts have not elaborated on the requirement of necessity—in general or in the case of negligent medical treatment—we look to other jurisdictions.

The Supreme Court of Appeals of West Virginia discussed the reasonable and necessary requirement in *Landau v. Farr*, 140 S.E. 141, 142 (W. Va. 1927). There, the plaintiff challenged the sufficiency of the damages she was awarded in an elevator accident, claiming that her medical expenses exceeded the award. *Id.* The court described "[t]he evidence [as] show[ing] that during plaintiff's sickness and convalescence she had been attended by five different physicians and about the same number of nurses." *Id.* The court continued,

> She offered no testimony to prove the necessity of so much professional service, or that the charges therefor were reasonable. One of the physicians who treated her . . . . testified that one competent physician would have been sufficient for her case, and that, while the several nurses were a comfort to the plaintiff, "good general care, such as was ordinarily taken of a patient at the hospital, was all that was necessary in her case."

*Id.*

In finding no error with the jury's damages award, the court recounted the general principles of recovery for medical bills:

> To constitute a recoverable element of damages, the expense must have been necessary and reasonable. The burden of proving this is on the plaintiff. The measure of the recovery under this head is not necessarily the amount paid for medical attendance. The reasonableness of the charges must be established. The reasonable charges intended are the reasonable charges of the profession generally, and not the usual charges of the particular physician or surgeon.

*Id.* (internal citations and quotation marks omitted). Applying these principles, the court said "the jury had the right to reject the payments and obligations incurred" by plaintiff either because they were not "reasonably necessary" or because "the charges for the extra treatment were not shown to be reasonable." *Id.*

The California Court of Appeal (then the District Court of Appeal) held similarly in *Graf v. Marvin Engh Truck Co.*, 24 Cal. Rptr. 511 (Cal. Dist. Ct. App. 1962). The court considered a plaintiff's claim that a jury's "award [was] grossly less than those damages which [were] incontestably the result of the accident[.]" *Id.* at 513. The plaintiff suffered injury in a three-car collision and submitted medical and hospital bills to prove damages, the totals of which doctors testified were reasonable and necessary. *Id.* at 511–13. Plaintiff specifically claimed "that the uncontested doctors and hospital bills exceeded the amount of the award[.]" *Id.* at 513. After noting that "[t]he question as to the amount of damages is a question of fact[,]" the court explained that "[i]t is not always necessary that the amount of the award equal the alleged medical expenses[.]" *Id.* at 513–14 (citation omitted). This

is because the medical services received by a plaintiff must be necessary and attributable to the accident, and their charges reasonable. *Id.* at 514.

The California court noted the conflicting evidence the jury considered, including that a doctor "clearly indicated that he believed plaintiff was feigning in respect to some of his complaints." *Id.* Specifically, the doctor testified "that there was no evidence of pain when the patient was distracted, but when the patient was aware that a range of motion was being elicited he complained of pain[.]" *Id.* Thus, it appears the jury was not persuaded that the medical charges were entirely attributable to the accident or that all of plaintiff's claimed suffering was real. *Id.* The appellate court deemed that the jury did not act arbitrarily in its damages award. *Id.* at 514–15.

From these cases, we gather several insights into the necessity requirement generally. First, the plaintiff must lay the proper foundation to introduce medical bills as evidence of damages. To do so, the plaintiff must put on expert testimony opining as to the bills' fairness, reasonableness, and necessity. This witness must be competent to testify about the necessity of the chosen treatments. In Maryland, this must be a medical professional intimately associated with the treatments. *Compare Thomas v. Owens*, 28 Md. App. 442, 444–45 (1975) (physician qualified to testify about reasonableness of charge), *with Desua*, 137 Md. App. at 144–45 (billing manager not competent to testify about necessity).

Second, once admitted, the necessity of medical treatments is a question of fact for a jury to decide, if empaneled, and the jury may decrease its award if it determines certain expenses were not necessary or their charges not fair and reasonable. *See Graf*, 24 Cal.

Rptr. at 513–14. Such decrease may occur when a plaintiff is "feigning" injury, s*ee id.* at 514, a medical provider intentionally "inflict[s] injury on [the plaintiff] by an act which is not intended to aid him[,]" Restatement (Second) of Torts § 457 cmt. e, or the plaintiff knowingly elects to treat an ailment entirely unrelated to the original tort, *id.*, or overconsumes medical treatments beyond what is required by the injury, *see Landau,* 140 S.E. at 142. On this last point we note that disqualifying the bills from a damages calculation requires some element of knowledge, intention, or bad faith on the part of the plaintiff. *See Venissat v. St. Paul Fire & Marine Ins. Co.*, 968 So. 2d 1063, 1073 (La. Ct. App. 2007), *amended on reh'g* (Nov. 7, 2007) ("[A] tortfeasor must pay for medical treatment of his victim, even over treatment or unnecessary treatment, unless such treatment was incurred in bad faith.").

*The "Necessary" Requirement & Negligent Medical Treatment*

The "necessary" requirement takes on a different shape when the issue involves liability of the original tortfeasor for damages caused by a later tort committed by the physician treating the plaintiff. The comments to the Restatement make clear that § 457 applies in cases of negligent medical treatment, including negligent misdiagnosis. Restatement § 457 cmts. a & c, illus. 1. As State Farm noted, Maryland courts have not discussed the interplay between § 457 of the Restatement and the *Desua* rule. We take the opportunity to explain the interplay here.

The Supreme Court of Indiana considered whether a tortfeasor was liable for medical bills relating to treatments the tortfeasor deemed unnecessary in *Sibbing v. Cave*, 922 N.E.2d 594, 599–600 (Ind. 2010). Following a car accident, the plaintiff sued

defendant for damages that included medical expenses. *Id.* at 596–97. These medical expenses included a nerve conduction study and "passive care" treatment. *Id.* at 599–600. The trial court excluded parts of defendant's expert's deposition contesting the medical necessity of those treatments. *Id.* The appellate court explained that "[f]or over a century, some Indiana appellate opinions have recited that to recover damages for medical expenses such expenses must be 'reasonable and necessary.'" *Id.* at 600 (citations omitted). It went on to clarify, however, that "[w]hen this phrase has appeared, the issue usually addressed is the reasonableness of medical expenses, not the necessity of the medical treatment." *Id.*

As illustration, the court described the evolution of the "reasonable and necessary" rule in Indiana:

> As authority for the "reasonable and necessary" requirement, *Stanley* [*v. Walker*, 906 N.E.2d 852 (Ind. 2009)] rests upon *Cook* [*v. Whitsell-Sherman*, 796 N.E.2d 271 (Ind. 2003)], *Cook* rests upon *Smith* [*v. Syd's, Inc.*, 598 N.E.2d 1065 (Ind. 1992), and *Smith* cites to *Hickey* [*v. Shoemaker*, 167 N.E.2d 487 (Ind. App. 1960)] and [*City of*] *Bedford* [*v. Woody*, 55 N.E. 499 (Ind. App. 1899)] as its authority. While both *Hickey* and *Bedford* use the phrase reasonable and necessary," neither case addresses the "necessary" component. In *Hickey*, the issue addressed was whether the defendant could be liable for the wife's medical bills, then the debt of her husband. The issue in *Bedford* was the need to prove "reasonable value" of unpaid medical services.

*Id.* at 601 (footnote omitted).

When the cases have involved the "necessary" aspect, the Indiana court explained, they have done so "without detailed discussion." *Id.* Nevertheless, the court continued, "it is apparent that the shorthand phrase 'reasonable and necessary' embodies two aspects.

First, the claimed amount of medical damages must be reasonable.  Second, the nature and extent of the claimed medical treatment must be necessary." *Id.* at 602.

The high court explained the limits of a defendant's right to contest the plaintiff's doctor's diagnosis and treatment:

> [A]n injured party may recover for injuries caused by the original tort-feasor's negligent conduct and for any aggravation of those injuries caused by a physician's improper diagnosis and unnecessary treatment or proper diagnosis and negligent treatment.  **In order to recover under this rule, the plaintiff need only show he exercised reasonable care in choosing the physician.**

*Id.* (quoting *Whitaker v. Kruse*, 495 N.E.2d 223, 226 (Ind. Ct. App. 1986)) (emphasis added).  This is so because "the tort-feasor created the necessity for medical care in the first instance.  So long as the individual seeking medical care makes a reasonable choice of physicians, he is entitled to recover for all damages resulting from any aggravation of his original injury caused by a physician's misdiagnosis or mistreatment."  *Id.* (quoting *Whitaker*, 495 N.E.2d at 225–26).  A contrary "rule would place the injured party 'in the unenviable position of second-guessing his physicians in order to determine whether the doctor properly diagnosed the injury and chose the correct treatment.'"  *Id.* at 603 (quoting *Whitaker*, 495 N.E.2d at 226).

The Indiana Supreme Court cautioned, however, that a plaintiff is not allowed "to recover for medical treatment wholly unrelated to a defendant's wrongful conduct."  *Id.*  A defendant's liability is still constrained by the principles of causation and the requirement that the amount of medical expenses be reasonable.  *Id.*  Thus, the court "h[e]ld that the phrase 'reasonable and necessary,' as a qualification for the damages recoverable by an

injured party, means (1) that the amount of medical expenses claimed must be reasonable[] [and] (2) that the nature and extent of the treatment claimed must be necessary in the sense that it proximately resulted from the wrongful conduct of another[.]" *Id.* at 604.

Like the cases in Indiana, our cases involving the rule that medical expenses be fair, reasonable, and necessary have primarily involved the reasonableness of the dollar amount of charges. *Desua* cited *Shpigel*, *Kujawa*, and *Metropolitan Auto Sales*.[17] *Shpigel* and *Kujawa* both involved the reasonableness of medical bills. *Shpigel*, 357 Md. at 128–29; *Kujawa*, 224 Md. at 208. *Metropolitan Auto Sales* involved necessity but concluded the issue without much discussion. 252 Md. at 154. In reducing a damages award, our Supreme Court said only that there had been "no showing that [plaintiff's] hospitalization was necessary or that the charge was reasonable[.]" *Id.* The Court cited *Kujawa* to support its reduction on this basis, *id.*, which, as we have said, involved reasonableness of the dollar amount of medical bills and not the necessity of treatments provided. While *Desua* involved the issue of necessity, it did not address whether medical bills involved necessary treatments. Instead, it addressed who was competent to testify about the necessity of those treatments, concluding that medical bills could not be introduced through a billing manager where the issue of necessity has been raised. 137 Md. App. at 144–45.

---

[17] *Desua* also cited to *Thomas v. Owens*, 28 Md. App. 442 (1975), and *Simco Sales Service of Md., Inc. v. Schweigman*, 237 Md. 180 (1964). 137 Md. App. at 144. Both *Thomas* and *Simco* involved the type of witness who was qualified to testify about the reasonableness of the price of medical bills. *Thomas*, 28 Md. App. at 444–45 (doctor testified that hospital charge was reasonable); *Simco*, 237 Md. at 188–89 (hospital's director of accounts testified that charges were fair, reasonable, and customary for services rendered). Neither involved the issue of necessity.

Maryland cases since then have likewise focused on the reasonableness *in amount* of medical bills. *See Westfield Ins. Co. v. Gilliam*, 477 Md. 346, 353 (2022) (reciting the rule that "[t]he tortfeasor remains responsible for paying the victim the 'fair and reasonable' value of the health care services that the victim needed as a result of the tort" in an action involving uninsured motorist and workers compensation benefits); *Brethren Mut. Ins. Co. v. Suchoza*, 212 Md. App. 43, 57 (2013) (trial court properly excluded evidence of payment of medical bills where appellant presented no expert or other competent evidence to show fairness and reasonableness of the payments); *Lamalfa v. Hearn*, 457 Md. 350, 391 n.8 (2018) ("When medical bills are introduced into evidence to support a plaintiff's claim for damages, the trial court necessarily makes a finding, either implicitly or explicitly, that the medical bills reflect amounts that are fair and reasonable.").

The Supreme Court of Arkansas considered an issue more analogous to the present case in *Ponder v. Cartmell*, 784 S.W.2d 758 (Ark. 1990). The plaintiff in that case was injured in a bus accident and sued the driver and bus owner. *Id.* at 759. At trial, the plaintiff's doctor testified that she "had a degenerative disc disease in her neck which was aggravated by the accident." *Id.* at 760. The doctor testified that the surgical procedures he performed "were necessitated by the injury [plaintiff] received in the accident." *Id.* The defendants presented expert testimony refuting plaintiff's doctor's diagnosis and his opinion that the accident aggravated the plaintiff's degenerative disc disease. *Id.* This testimony, the court said, was proper because "a defendant's medical expert may testify that the physical injuries for which the plaintiff seeks compensation were not caused by the accident." *Id.*

The defendants' expert also testified that the plaintiff's doctor "misdiagnosed the [plaintiff's] symptoms and that this misdiagnosis led to unnecessary surgery." *Id.* The court concluded that this testimony should not have been admitted, explaining that the plaintiff's "recovery should not be diminished because [her doctor's] misdiagnosis, if indeed that was the case, led to the use of extreme medical procedures." *Id.* "This [would] violate[] the principle that, so long as an individual has used reasonable care in selecting a physician, she is entitled to recover from the wrongdoer to the full extent of her injury, even though the physician fails to use the remedy or method most approved in similar cases or adopt the best means of cure." *Id.* at 761.

Most interesting for our present appeal is the court's focus on the "reasonable and necessary" requirement when the original tortious injury is followed by negligent medical treatment. *Id.* The court explained that the term "'[n]ecessary' means causally related to the tortfeasor's negligence." *Id.* "If a plaintiff proves that her need to seek medical care was precipitated by the tortfeasor's negligence, then the expenses for the care she receives, whether or not the care is medically necessary, are recoverable." *Id.*

The Colorado Court of Appeal is in accord. *Danko v. Conyers*, 432 P.3d 958 (Colo. App. 2018). In *Danko*, the defendant sought to introduce evidence that a subsequent amputation performed on the plaintiff was "unnecessary." *Id.* at 961. The trial court excluded such evidence. *Id.* Relying on § 457 of the Restatement, which absolves an original tortfeasor of liability for subsequent treatment that is "extraordinary misconduct," *id.* at 965, the appellate court reasoned that "an 'unnecessary' amputation does not equate to extraordinary misconduct." *Id.* at 966. The Restatement itself contemplates continued

liability for an unnecessary operation performed as a result of a misdiagnosis. *Id.* (citing Restatement § 457 cmt. c., illus. 1). Indeed, the kind of amputation "was a foreseeable risk" and thus not an intervening cause. *Id.* Accordingly, the fact that an operation is colloquially "unnecessary" does not necessarily relieve the original tortfeasor of continued liability.

We are persuaded by the reasoning in the above cases, which are consistent with Maryland law and the Restatement (Second) of Torts § 457. In this context, when a plaintiff seeks medical treatment for injuries caused by an original tortfeasor, and that medical provider is allegedly negligent, the analysis of the *Desua* requirement that medical bills be fair, reasonable, and necessary shifts to fit the circumstances. Here, "necessary" means "causally related," *Ponder*, 784 S.W.2d at 761, or "proximately resulted from," *Sibbing*, 922 N.E.2d at 604, the original tort.

The necessary requirement is still an important evidentiary safeguard to ensure that the evidence considered by the jury does not inflate the damages calculation; the bills must still be fair and reasonable. However, a defendant may not challenge the necessity of treatments solely on the basis that the treatment was performed because of a negligent misdiagnosis—i.e., that the treatment was "unnecessary."

*Guidance on Remand: Who Has the Burden to Prove What?*

We have discussed *Copsey v. Park*, 453 Md. 141 (2017), above for its discussion of subsequent medical negligence as a potentially superseding cause. That case, and our Supreme Court's subsequent decision in *American Radiology Services, LLC v. Reiss*, 470 Md. 555 (2020), also lend guidance on the required burdens of pleading and production

when a defendant seeks to alleviate its liability based on subsequent negligent medical treatment.

In *Copsey*, a widow and minor surviving children sued on behalf of themselves and the decedent's estate, alleging that a radiologist negligently interpreted the decedent's radiological images, causing his death. *Id.* at 147. Before trial, the plaintiffs moved to prevent the radiologist from "raising the defense that the negligence of subsequent treating physicians was an intervening and superseding cause of [the decedent's] death." *Id.* at 147–48. As previously mentioned, our Supreme Court affirmed the denial of this motion and held that "a defendant *generally denying liability* may present evidence of a non-party's negligence and causation as an affirmative defense." *Id.* at 156 (emphasis added). Thus, "[i]t was not error [for the trial court] to admit evidence of the negligence of the non-party subsequent treating physicians." *Id.*

We take the Court's qualifier "generally denying liability" to mean that the defense is available at trial when the defendant, in the answer to the complaint, asserts a general denial of liability in its assertion of defenses. Application of the defense, however, was limited by the Court's subsequent decision in *American Radiology Services*.

In *American Radiology Services*, the Court considered whether expert testimony was required to establish the medical negligence of a subsequent treating physician where the defendants raised it as a defense. 470 Md. at 561–62 . The Court concluded, "To the extent that a defendant elects to raise non-party medical negligence as part of its defense, the defendant has the burden to produce admissible evidence to allow a jury to make a finding on that issue." *Id.* at 562. In the trial court, the defendants had raised and argued

the issue of subsequent medical negligence and the issue was submitted to the jury. *Id.* This was error because, without the requisite expert medical testimony, "the record was devoid of admissible evidence sufficient to generate a triable issue of non-party physician negligence." *Id.*

The defendants in *American Radiology Services* attempted to distinguish between raising non-party negligence as an affirmative defense and raising it as an alternative theory of causation. *Id.* at 578. According to the defendants, "the burden of persuasion never shifted to [them] to require proof of an affirmative defense. Because they had no burden of persuasion, [the defendants] posit[ed] that they were not required to provide standard of care evidence of non-party negligence." *Id.* The Court rejected this distinction. *Id.* at 578–79. It explained that "[t]he necessity of expert testimony to establish medical negligence and causation is rooted in the *evidentiary requirement* that such issues are beyond the general knowledge and comprehension of layperson jurors." *Id.* at 583.

From *Copsey* and *American Radiology Services*, we glean that both the burden of pleading and the burden of production are on the defendant when the defendant asserts that subsequent negligent medical treatment was a superseding cause of a plaintiff's injuries. That is, the defendant must sufficiently raise the issue in its pleadings before trial. This is satisfied, though, with a general denial of liability in the defendant's answer to plaintiff's complaint. *See Copsey*, 453 Md. at 174; *Am. Radiology Servs.*, 470 Md. at 582.

The defendant must also produce admissible evidence from which a jury could decide that a subsequent medical provider's negligence was so extraordinary or unusual that it constituted a superseding cause and alleviated the defendant's liability. *See Copsey*,

453 Md. at 165; *Pittway*, 409 Md. at 249. As our Supreme Court in *American Radiology Services* did, we likewise find the Honorable Joseph F. Murphy, Jr.'s depiction helpful:

> Someone must put the ball into play. *Generating an issue involves production of evidence sufficient to require that the factfinder resolve a contested issue.* In order to get a jury instruction you must produce evidence that supports it. The jury is not permitted to find that a particular fact exists unless there is an evidentiary basis for this conclusion.

470 Md. at 583 (quoting *Maryland Evidence Handbook*, § 403, at 132). In that case, the Court concluded that the defendants raising the issue of non-party negligence "were required to produce and generate sufficient admissible evidence to enable the jury to make a factual finding that non-party physician negligence, in fact, existed[.]" *Id.* The Court clarified that this requirement related to the defendant's burden of production and did not implicate the ultimate burden of persuasion. *Id.* Finally, the Court explained that this burden of production requires expert testimony "unless the non-party's medical negligence is so obvious that ordinary laypersons can determine that it was a breach of the standard of care." *Id.* at 584.[18]

The above-cited Colorado case, *Danko v. Conyers*, 432 P.3d 958 (Colo. App. 2018), similarly allocated the burden of production on the defendant. The court discussed the

---

[18] Our Supreme Court clarified that the defendant need not put on their own expert but must put forth their own evidence: "We are not holding or requiring that the defendant must call his or her own expert to generate the issue to prove that a non-party physician or 'the empty chair' was the negligent person. Consistent with our jurisprudence on the issue, assuming discovery rules are satisfied, the defendant may elicit expert standard of care testimony through cross-examination of plaintiff's expert, or may call an expert of his or her own, but the defendant is not required to call an expert of his or her own." *Am. Radiology Servs.*, 470 Md. at 584 (footnote omitted).

exception to the Restatement provision relieving an original tortfeasor from liability from extraordinary misconduct in subsequent treatment. *Id.* at 965. The trial court had excluded evidence of other medical providers' negligence in treating the plaintiff. *Id.* at 962. The appellate court held that it was within the trial court's discretion to do so. *Id.* at 966. It explained that the defendant "did not present any expert testimony that the amputation constituted extraordinary misconduct, much less gross negligence." *Id.* at 966. Instead, the defendant's experts identified "substandard medical care" as leading to the plaintiff's additional injury. *Id.* Because the defendant offered insufficient evidence that subsequent treatment was a superseding cause, the trial court properly exercised its discretion in excluding the evidence. *Id.*

In the above discussion, we identified five instances where injury caused by subsequent negligent treatment could be beyond the scope of the original tortfeasor's liability: (1) extraordinary misconduct by medical professionals, (2) intentional torts committed by medical professionals against the victim, (3) a victim's elected treatment of an ailment known to be unrelated to the injuries caused by the negligent actor, (4) treatment by a medical professional the victim was negligent in selecting, and (5) aggravation of the injury due to the victim's negligence in carrying out the treatment of her injuries.

As *Copsey* and *American Radiology Services* demonstrate, it is fitting to allocate the burden of production on the party seeking to alleviate its liability through any of these assertions. Each of these assertions tends to "negate[] [an] essential element[] of a plaintiff's case"— causation—"and may thereby defeat recovery." *See Ellsworth v. Sherne Lingerie, Inc.*, 303 Md. 581, 597 (1985) (characterizing misuse of a product as a "defense"

tending to negate defectiveness and causation in the strict liability context). Accordingly, the defendant must produce admissible evidence in support of any of the five assertions tending to negate the element of causation while the ultimate burden of persuasion on that element remains with the plaintiff. *See Armstrong v. Johnson Motor Lines, Inc.*, 12 Md. App. 492, 500 (1971) ("A plaintiff is never relieved of the burden of proving negligence of a defendant when that negligence is in issue, even though the burden of going forward may shift after the plaintiff has proved a *prima facie* case, with the help of any permissible inferences.").

In sum, to satisfy its burden of production, a defendant must produce admissible evidence in support thereof. If the bases involve "issues [that] are beyond the general knowledge and comprehension of layperson jurors[,]" *Am. Radiology Servs.*, 470 Md. at 583, expert medical testimony will be required to satisfy that burden.

### CONCLUSION

For the foregoing reasons, we reverse the circuit court's grant of State Farm's motion for summary judgment. Browne was entitled to proceed with a CJP § 3-1701 action in the circuit court after receiving a final decision from the OAH and was not collaterally estopped from maintaining her circuit court action. We also vacate the circuit court's denial of Browne's motion for summary judgment due to its mistaken reasoning in doing so.

Accordingly, we remand this case for proceedings consistent with this opinion. On remand, the court will have another opportunity to rule on Browne's motion using correct legal standards and consistent with the foregoing opinion.

**GRANT OF STATE FARM'S MOTION FOR SUMMARY JUDGMENT REVERSED. DENIAL OF BROWNE'S MOTION FOR SUMMARY JUDGMENT VACATED. CASE REMANDED TO RULE ANEW ON BROWNE'S MOTION AND FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY STATE FARM.**